FREEPORT COAL CO.

*v.*

VALLEY POINT MINING CO., *et al.*

(CC 823)

Submitted September 13, 1955. Decided December 6, 1955.

*Robert T. Donley*, for plaintiff.

*Jacob S. Hyer, Milford L. Gibson, Cramer W. Gibson*, for defendants.

BROWNING, JUDGE:

The Circuit Court of Preston County, on joint application of the parties, certified to this Court the questions

arising on the demurrers of the plaintiff, Freeport Coal Company, to the separate answers of the defendants, Valley Point Mining Company and J. E. & H. K. Kelly, to plaintiff's bill of complaint seeking to restrain defendants from mining and removing coal from the Bakerstown or upper seam of a 194.6 acre tract of land in Preston County.

Plaintiff's bill alleges ownership of the Bakerstown seam in the plaintiff, and its predecessors in title, by virtue of a severance deed executed in 1902. This deed, designated "Exhibit A" and filed with the bill, conveyed "all the coal upon and underlying" a certain farm or tract of land, with all necessary rights, "the said Grantors hereby expressly reserving and excepting from the said tract the upper vein of coal, locally known as the Three-foot vein and a sufficient quantity of lower veins for farm and domestic use, together with the right to dig and sell coal from the said upper 3 foot vein, for farm and domestic use and all rights to operate for oil, gas and other minerals."

The defendants derive their right and title, by succesive conveyances, from the grantors referred to in "Exhibit A", the last conveyance being from J. E. Kelly to Hugh K. Kelly, dated February 11, 1954, and designated "Exhibit B", and attached to the bill. This deed conveys "all of that certain tract or parcel of real estate", less certain out conveyances not here material, and contains the following provisions: "There is also reserved and excepted from this conveyance, in addition to the lands shown above, all the coal and mining rights as have been heretofore sold to other parties." Also, "The land hereby actually conveyed is assessed on the 1953 Land Book, Pleasant District, Preston County, West Virginia, as: Surface, 194.6 acres, Muddy Creek, in name of J. E. Kelly."

It is alleged in the bill of complaint that the defendant, Valley Point Mining Company, has been strip mining the Bakerstown or Three-foot seam of coal under an

oral agreement with the defendants J. E. Kelly and Hugh K. Kelly, and selling such coal to the Monongahela Power Company, and the Potomac Edison Company.

The defendants answered separately, as heretofore noted, to which answers the plaintiff demurred, which demurrers were overruled. It is not deemed necessary to set out the matters contained in the separate answers, inasmuch as such matters are readily apparent in the questions certified to this Court, which may be briefly stated as follows: (1) The severance deed, "Exhibit A", is clear and unambiguous in its terms and the exception contained therein created a mere license in the grantor to use the coal for "farm and domestic use".; (2) Therefore, parol evidence is inadmissable to vary the legal effect of an unambiguous instrument, or to show an "intention" of the parties different from that expressed in the instrument, or to show a "practical construction" of the instrument different from that expressed therein.; and (3) No lapse of time, during which there was an erroneous interpretation of the severance deed; adverse claim; payment of taxes thereon by defendants; or failure of plaintiff's predecessors to assert their claim; or non-user by the plaintiff, can change the legal effect of the instrument.

This Court is in agreement with the contentions of both the plaintiff and the defendants that the deed in question is a clear and unambiguous instrument, and that to determine the intent of the parties, it is not necessary to resort to the rules of construction. The litigants are, of course, not in agreement as to the intent of the parties to the instrument as shown by the words they used, and each would have this Court reach a different conclusion as to what the parties meant by the language contained in the deed. The words "for farm and domestic use" are common in oil and gas leases, but we find no case in this jurisdiction where a determination was made of the effect of such language in a reservation where coal was conveyed or leased.

400

The case of *Bruen, et al.* v. *Thaxton, et al.*, 126 W. Va. 330, 28 S. E. 2d. 59, involved a similar provision set forth in the deed in this language: "Excepting and reserving all the Coal and Iron minerals found in or upon said land to the said Alexander M. Bruen his heirs and assigns, with rights of way of ingress and regress necessary to the full enjoyment and use of this reservation and granting to the said Thaxton license to use such quantities of said minerals as may be required for his household and domestic purposes." Unfortunately, the controlling question in that case did not require consideration of the latter part of that quotation, and it was not discussed in the opinion. However, the principles applicable to the general subject are well established. In *Kohlsaat, et al., Trustees* v. *Main Island Creek Coal Co.*, 90 W. Va. 656, 112 S. E. 213, this Court said: "It is elementary that when a written agreement is clear and unequivocal in its terms, its meaning must be determined by its contents alone, and the courts will not give it a meaning other than that clearly expressed." There are, of course, many decisions of this Court to the same effect.

The plaintiff contends that the grantor in the severance deed reserved only a personal right to use coal from the upper or Bakerstown vein for farm and domestic use, and the right to dig and sell from that vein for farm and domestic use.

In *Yukon Pocahontas Coal Company* v. *Ratliff*, 181 Va. 195, 24 S. E. 2d. 559, a severance deed contained this clause: "The parties of the first part reserve one half an acre around the graveyard and also the rights to use coal for domestic purposes. * * *" The court said: "Finally it is contended that the trial court erred in refusing to hold that 'the rights to use coal for domestic purposes' was terminated upon the death of James M. Ratliff." "This contention is well founded. The language of the deed clearly indicated the reservation of a personal right which since the death of Ratliff has ceased to exist."

The plaintiff maintains also that if the grantor in the severance deed reserved more than a right, it was an estate in the nature of a *profit a prendre*. 28 C. J. S. 631-633; 25 W. Va. Law Quarterly 322. It further contends that if neither of these arguments be valid that the limiting language of the severance deed must be given effect under the theory of a restrictive covenant.

There is an important distinction between an exception and a reservation, though the words have often been used synonymously and so treated by courts to effect, the real contract between the parties. The distinction between them must be kept in mind in determining the issue presented in this case. Lord Coke said: "note a diversity between an exception (which is ever of part of the thing granted and of a thing *in esse*) and a reservation, which is always of a thing not *in esse*, but newly created, or reserved out of the land or tenement demised." The same principle has been stated by others in different language, but no one has defined it more clearly than Coke. This Court has held that though apt words of reservation are used, they will be construed as an exception, if such was the design of the parties. *Preston* v. *White,* 57 W. Va. 278, 50 S. E. 236. Minerals, coals and ores excepted from a grant remain in the grantor as before the grant. They are a distinct and separate property, which may be conveyed separately from the surface. *Preston* v. *White, supra.*

In *Whitaker* v. *Brown,* 46 Pa. 197, there was a conveyance in fee, the deed containing this clause: "he, the said Boyle Irwin, saving and *reserving* nevertheless for his own use, the coal contained in the said piece or parcel of land, together with free ingress and egress by wagon-road to haul the coal therefrom as wanted." The court held that the "saving clause operated as an *exception* of the coal, and, therefore, that the entire and perpetual property therein remained in the grantor." (Italics supplied.)

Out of an abundance of precaution, writers of deeds

often use both the words "reserve" and "except", as was done in the instrument here being considered. The severance grantor, at the time of the conveyance in question, owned the surface and all of the minerals underlying it. If he retained absolutely the upper vein of coal, this was an exception, since a vein of coal is a part of the land, and has been for so long that even geologists can only estimate the length of time it was truly *in esse*. This Court has determined that the upper vein was excepted from the coal conveyed to the grantee. Thus, the grantor continued to own that vein in fee after the conveyance just as he had before. There were no rights to reserve out of the grant, for title never passed, and all rights therein remained in the grantor.

It may readily be observed that the language of the deed in *Yukon Pocahontas Coal Company* v. *Ratliff, supra,* differs from that used in this conveyance. The reservation there was limited to "the rights to use coal for domestic purposes." There is no such limitation in this deed as to the upper vein.

The "reserving and excepting" of "a sufficient quantity of lower veins for farm and domestic use" limited the purpose for which coal could be taken from those veins, and the amount that was to be removed could not exceed that which was necessary for the purpose stated. Then comes the controversial language "together with the right to dig and sell coal from the said upper 3 foot vein for farm and domestic use and all rights to operate for oil, gas and other minerals." The contention of the plaintiff that if it had been the intention of the parties that the upper vein be excepted absolutely, there was no necessity to reserve "the right to dig and sell coal from the said upper 3 foot vein for farm and domestic use.", is persuasive. However, it must be noted that *the reservation of the right* to dig and sell coal from this vein is immediately followed by the reservation of *"all rights* to operate for oil and gas and other minerals." (Italics supplied.) None of the minerals underlying this tract,

except coal, were conveyed, and the severance grantor was careful to provide in the deed that the extensive mining rights granted to the grantee, for the purpose of removing the coal conveyed to him, would not restrict the grantor's rights in removing the oil, gas and other minerals which might underlie the tract. Likewise, the severance grantor retained *the right* to dig and sell coal from the upper vein. The fact that the words "for farm and domestic use", followed the right to dig and sell coal from this vein, cannot serve the purpose of defeating the clear intent of the parties, which is apparent from an examination of the deed as a whole. Once the upper vein of coal was excepted from the conveyance, the provision that it was to be sold for certain purposes cannot impose a limitation upon the exception.

The provision that the severance grantor should have the "right" to dig and *sell* coal from the upper vein further emphasizes the intent of the parties. The grantor could do more than use the coal from the upper vein for farm and domestic purposes. He could mine the coal therefrom and sell it commercially. Such language denotes ownership rather than the reservation of a right. An anomalous situation indeed would have been created had both the grantor and the grantee secured simultaneously the right to mine coal commercially from the same vein, even though the former could do so only to a limited extent.

In *List, Trustee, et al.* v. *Cotts, Trustee, et al.*, 4 W. Va. 543, the deed involved granted a small parcel of land in fee simple and "also the right of digging for coal under the adjoining land lying east of said lot." The Court held that the deed conveyed to the grantee the absolute property in the coal with the exclusive right to mine and remove the same. As against the defendants' contention that there were joint rights in the grantor and grantee to "dig for coal", the Court had this to say: "More than this, it is notorious that the coal is a stratum about six feet thick and extending over

the whole country, that it is a very expensive affair to open a coal bank, and that it would be impossible for two having adverse interests to operate it together." "Now, if the grantor has the right to dig for coal in this same vein, how much has he the right to take out? Can he not take it all if he should choose? Where is the limit to his digging, and what becomes of his covenant of warranty?" "If the grantee should take all of the coal out, what ground of complaint would the grantor have? It is absurd that two persons could have an unlimited right to dig coal in the same specified tract of land under the circumstances, and so thought Hugh Nichols, the owner of the surface all his life, and it was reserved for the ubiquitous Isaac Cotts to discover the contrary."

Reverting again to the rights retained by the grantor in the veins of coal, other than the upper vein, it is equally clear that the grantor reserved only the right to take a sufficient quantity of coal from these veins for farm and domestic use. We find the unusual situation wherein the upper vein of coal on the tract was excepted absolutely, and the grantor reserved a limited right as to the other veins of coal which he conveyed.

The words "together with the right to dig and sell coal from the upper 3 foot vein for farm and domestic use", were descriptive of a purpose for which the upper vein was excepted, and a safeguard against the loss of mining rights. This language was superfluous since the excepted coal could be used in any way the grantor desired, and the exception assured him of necessary mining rights. *Porter* v. *Mack Manufacturing Co.*, 65 W. Va. 636, 64 S. E. 853.

The questions certified to this Court have been sufficiently answered. The rulings of the Circuit Court of Preston County, in overruling demurrers to the answers of the defendants, are affirmed.

*Rulings affirmed.*