STATE *ex rel.* ROBERT SHATZER

*v.*

FREEPORT COAL COMPANY, *etc., et. al.*

(No. 11095)

Submitted April 19, 1960.        Decided June 21, 1960.

344

*Robert T. Donley, R. Doyne Halbritter,* for plaintiffs in error.

*Milford L. Gibson, James T. Dailey, Jr.,* for defendant in error.

CALHOUN, JUDGE:

The defendant, Freeport Coal Company, a corporation, instituted a number of suits in the Circuit Court of Preston County during the year 1954, in which suits it sought to establish its ownership of the Bakerstown seam of coal underlying certain real estate in Pleasants District of that county. One of these suits was against Robert Shatzer, relator herein, (hereinafter referred to as "the plaintiff") and Nina Mabel Graham, his lessor, and on April 20, 1954, the circuit court granted in that suit a temporary injunction in favor of Freeport Coal Company restraining Robert Shatzer from removing the coal from the Bakerstown seam under-

lying a certain tract of 350.75 acres of land. Thereupon Freeport Coal Company executed an injunction bond in the penalty of $25,000 with United States Fidelity and Guaranty Company as surety thereon.

In the case of *Freeport Coal Co. v. Valley Point Mining Co. et al.,* 141 W. Va. 397, 90 S. E. 2d 296, which was one of the series of suits instituted as stated above, this Court affirmed the action of the lower court in its finding that the Bakerstown seam of coal was, in fact, owned by the owners of the surface and not by Freeport Coal Company. Thereupon the suit of Freeport Coal Company against Robert Shatzer and his lessor was dismissed, the temporary injunction was dissolved and the case was removed from the docket.

Thereafter Robert Shatzer instituted the present action in debt on the injunction bond against Freeport Coal Company and United States Fidelity and Guaranty Company to recover damages alleged to have been sustained by him by the wrongful issuance of the injunction during the period from April 20, 1954, to April 10, 1956, the period during which the injunction was in effect.

A previous trial resulted in a verdict in favor of Robert Shatzer in the sum of $21,500, upon which judgment was entered on July 31, 1957. Upon writ of error this Court reversed such judgment, the verdict of the jury was set aside and a new trial was awarded to the defendants. *State ex rel. Robert Shatzer v. Freeport Coal Company,* 144 W. Va. 178, 107 S. E. 2d 503.

A second trial of the case in the circuit court resulted in a verdict in favor of the plaintiff against the defendants for the sum of $20,753.93, upon which judgment was entered on July 17, 1959. The case is now before this Court upon writ of error to that judgment.

Upon the second trial, as upon the first, the defendants conceded liability for the bond premium of $75.00 and attorney fees incurred by the plaintiff in the sum of $350.00 in an effort to have the injunction dissolved. Items of damage numbered six and seven in the former

opinion, representing "loss by oxidation of uncovered coal, $2,320.00''; and "loss of contract for sale of coal, $32,000.00'', were not asserted or claimed during the second trial. The items of damage asserted by the plaintiff during the second trial, in addition to the bond premium and attorney fees, were: (1) The cost of moving mining machinery and equipment from the Graham tract to other locations where such machinery and equipment were put to use; (2) the cost of moving such mining machinery and equipment back to the Graham tract where mining operations were resumed after the dissolution of the injunction; and (3) a claim for the loss of use, or "rental value", of such machinery and equipment which was rendered idle by the injunction until the several items thereof could be put to use again at other locations.

Errors assigned by the defendants are: (1) There was no causal connection between the existence of the injunction and the failure of the plaintiff to obtain the alleged rental value of his equipment; (2) the proof of alleged losses incurred by way of moving expense for equipment was "utterly insufficient"; and (3) the proof of alleged losses of rental value of equipment was "utterly insufficient."

In the former trial, the evidence concerning the cost of moving the mining equipment was based primarily upon mere estimates made by the plaintiff. In connection therewith the Court stated in its former opinion: "The evidence offered in behalf of the relator to establish the items of damages which he seeks to recover in connection with the movement of his mining equipment from the 350.75 acre tract to another location and back to the 350.75 acre tract after the dissolution of the injunction, showing merely an estimate of the amount of damage sustained, not disclosing any specific item of the actual cost of labor or transportation incurred in the movement of the equipment, and not being supported by any receipt or voucher or other record evidence of the payment of any such cost, is not sufficient to support a finding in favor of the

relator for any portion of the cost in items 3 and 4 of the claim of the relator.''

On the second trial the testimony relative to the cost of moving the machinery and equipment was vastly more detailed and specific. Robert Shatzer, plaintiff, testified that he used his own equipment and labor force in such moving operations, except for one item of equipment which was rented for the purpose; that since the year 1928 he has had experience in moving heavy equipment of this nature; that he was personally present during all such moving operations, except as to one item of equipment and that, therefore, he has personal knowledge concerning the men employed, the rate of pay and length of time involved; that only one item, a grader, could be moved under its own power; and that it was necessary to ''split up'' or dismantle some items of equipment in order to move them.

Shatzer testified that the moving costs are reflected in his records, though it is obvious from his entire testimony that he meant that such was true only in a limited sense. It is clear from his testimony that he consulted his books and records to some extent and that with the information thus obtained, supplemented by his personal knowledge of the men, equipment and time involved, he made a computation of the cost of moving each item of equipment. For instance, he arrived at the cost of moving an air compressor back to the Mabel Graham tract as follows: ''Use of dump truck six hours at $5.00 an hour, making $30.00; one man six hours at $1.50, making a total of $9.00; or $39.00 for the moving it back.'' The cost of moving each item of equipment was determined by the witness in a similar manner. There were approximately eighteen items of equipment, having a gross weight in excess of two hundred forty tons. Shatzer testified that the aggregate cost of moving the equipment from the Graham tract was $3,243.30, and that the aggregate cost of returning the equipment to the Graham tract was $3,603.13. From his background of experience in moving heavy equipment of this nature, he testified

that the moving costs fixed by his testimony were reasonable in amount. Blaine Gorby, a witness in behalf of the plaintiff, testified that he has had considerable experience in moving heavy strip mining equipment, and he confirmed the reasonableness of costs which plaintiff testified he incurred in moving the equipment.

Counsel for the defendants insist that the proof relating to the cost of moving the equipment is not, in the words employed by the Court in the former opinion, ''supported by any receipt or voucher or other record evidence'', and that, therefore, such proof is insufficient. This contention involves an unwarranted construction of the language used in the former opinion. The Court clearly did not state or imply therein that the plaintiff's claim may be established only by vouchers, receipts or other record evidence and that no other sort of evidence will suffice.

Counsel for the defendants contend further that the testimony of Robert Shatzer, the plaintiff, was based in part on his records, and that, therefore, his testimony relative to moving costs contravenes the best evidence rule as stated in 20 Am. Jur., Evidence, Section 409, page 369. We are unable to perceive the force of that contention. It is not contended on behalf of the plaintiff that his records at any place reflect the facts and figures appearing in his computations. No witness so testified. The testimony of the plaintiff in this respect detailed independent computations made by him and based, in a great measure at least, on his own personal knowledge of the facts involved in such computations.

The defendants introduced no testimony to disprove the reasonableness of the charges or the accuracy of the computations submitted on behalf of the relator to prove the cost involved in moving the equipment. Indeed, no testimony whatsoever was introduced on behalf of the defendants.

The defendants place firm reliance on their assertion that there ''was no causal connection between

the existence of the injunction and the failure of the plaintiff to obtain the alleged rental value of his equipment.''

It is true that the evidence fails to disclose that the plaintiff tried or even desired to rent the mining equipment in question. It is true also that the injunction did not specifically prohibit the plaintiff from renting such equipment. The plaintiff's claim is based on his contention that the effect of the injunction was to deprive him of the use of his mining machinery and equipment and to render it idle until the several items thereof could be put to use again on other projects. If the plaintiff suffered financial loss in this respect as a direct consequence of the issuance of the injunction, he should be permitted to recover therefor in this action. This is true, not because the injunction prohibited the plaintiff from renting the machinery and equipment, but because temporarily it was necessarily rendered idle and because the plaintiff was meantime deprived of the use thereof.

The record discloses that during the second trial the distinguished trial judge, with commendable assistance furnished by counsel for the respective parties, made a careful effort to interpret correctly and to apply properly the course charted by the Court in its former opinion. The trial court determined that ''rental value'' represented a proper measure of the plaintiff's damages resulting from his temporary loss of the use of his machinery and equipment as a consequence of the issuance of the injunction. The testimony indicated that the machinery and equipment could have been rented, but that because of its nature three or four months might have been required in order to do so.

Jack Welling, a witness for the plaintiff, testified that he is a coal stripping contractor; that he lives at Kingwood in Preston County; that he was in the coal stripping business from 1941 to 1950; that from 1950 to 1955 he was ''in the equipment business''; that he

was familiar with the rental values of heavy equipment in Preston County in 1954; that he had personal knowledge of the mining equipment owned by the plaintiff in 1954 and that it was "all in good condition"; that in the year 1954 he represented the Ray C. Call Company, an equipment dealer engaged in renting and selling heavy equipment; and the witness proceeded to state the rental value on a monthly basis of the several items of equipment as of 1954 in Preston County. He testified that such rental values were taken from a manual of the Associated Equipment Dealers which was designed to cover an area which includes Preston County.

Blaine Gorby, a witness for the plaintiff, testified that he lives at Kingwood; that in the year 1954 he was a sales representative for Richardson Tractor Company, which sold industrial equipment, including equipment of the type used in strip mining; that prior to the year 1954 he had been engaged for about ten years in coal mining in Preston County; that he has had experience in moving heavy equipment; that during the year 1954 there was "a market for the rental of strip mining equipment"; that as a representative of Richardson Tractor Company, he not only sold but also rented heavy equipment; and he proceeded to fix the rental values in 1954 in Preston County of the various items of equipment in question. He testified that his rental values were taken from a booklet published in 1954 by Associated Equipment Distributors for an area including Preston County. He testified that "it is the same book that all equipment companies in this area use, the same rental book." On cross-examination the following question was propounded: "In other words, what you wanted to tell the jury was if anyone wanted to rent the equipment that is what you would consider a fair price?" The witness answered: "That is right."

In an action on an injunction bond, the allowance of damages should rest on equitable principles and, as a general rule, recovery may be had for such dam-

ages as were actually sustained as the proximate result of the injunction during the time it was operative. 43 C.J.S., Injunctions, Section 309, page 1091; 10 M.J., Injunctions, Section 104, page 97; 28 Am. Jur., Injunctions, Section 343, page 858. "It may be stated as a general rule that compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order, while the latter is alive and operative, is the measure of damages to be assessed against bondsmen." *State v. Marguerite Coal Co.*, 104 W. Va. 324, 326-27, 140 S. E. 49, 50. See also *State v. Carden*, 111 W. Va. 631, 163 S. E. 54. The general rule is stated in High on Injunctions (4th Ed.), Vol. 2, Section 1663, page 1613, as follows: "In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed." "Where the effect of the injunction wrongfully issued has been to restrain defendant from the use or occupation of property, he is entitled to recover the damages necessarily and proximately resulting therefrom, and, in determining the extent of such damages, the court proceeds on equitable principles and is not governed by arbitrary or technical rules. * * * The injunction defendant is in general entitled to recover rental value of the property, or the value of its use and occupation, which was lost because of the injunction, * * *." 43 C.J.S., Injunctions, Section 315, pages 1094-95. See also High on Injunctions (4th Ed.), Vol. 2, Section 1673, page 1624; 28 Am. Jur., Injunctions, Section 344, page 860; 15 Am. Jur., Damages, Section 129, page 537. "The general rule, well supported by authority and the fairest that could be adopted, is that damages for the wrongful deprivation of the use of specific property are to be measured by its rental value." *Standard Supply Co. v. Carter & Harris,* 81 S. C. 181, 62 S. E. 150, 151.

In the case of *Muscoda Bridge Co. v. Worden Allen Co.*, 207 Wis. 22, 239 N. W. 649, a temporary injunction restrained the defendant from erecting any structure in the bed of the Wiconsin River. In holding that the defendant was entitled to recover on the injunction bond the rental value of certain equipment which was rendered idle by the injunction, the Court stated: "The temporary injunction was in force forty-nine days. The defendants were upon the job with the machinery in place and the temporary injunction brought the whole operation to a standstill. During the period in question the defendants were deprived of the use of their property. At that time they had no other use to which they could put the equipment. The referee allowed what he found to be a fair rental value of the equipment, his finding was approved by the trial court, and we think correctly so."

In the case of *Wilson Co. v. Guyandotte Timber Co.*, 70 W. Va. 602, 74 S. E. 870, the fifth point of the syllabus is as follows: "Rental value is a proper measure in ascertaining damages for loss by delay in the operation of a mill." See also *Pickens v. Coal River Boom & Timber Co.*, 51 W. Va. 445, 41 S. E. 400; *Hurxthal v. St. Lawrence Boom & Mfg. Co.*, 65 W. Va. 346, 64 S. E. 355, and *State v. Carden,* 111 W. Va. 631, 163 S. E. 54.

It is obvious that the plaintiff's heavy mining equipment was costly; that it was rendered idle temporarily; and that the plaintiff was necessarily deprived of its use until the several items thereof could be moved and put to use on other projects. It is apparent from the testimony that the plaintiff acted with reasonable diligence in finding use for the equipment after his coal mining operations were stopped by the injunction, and that in this respect he exercised due diligence to minimize the damages.

The equipment was made idle as a direct and proximate result of the injunction, and the plaintiff is

entitled to recover in this action a sum sufficient to compensate him for the temporary loss of the use of the equipment. In testimony offered in his behalf, the plaintiff asserted a claim of $53,139.75 as the "rental value" of the several items of equipment, made idle as a result of the injunction. This sum of $53,139.75, added to the item of $3,243.30, claimed as the cost of moving the equipment from the Graham tract, and the item of $3,603.13, claimed as the cost of returning the equipment to the Graham tract, make an aggregate sum of $59,986.18 claimed by the plaintiff at the trial. The jury returned a verdict for $20,753.93, slightly more than one-third of the total sum claimed by the plaintiff. It is obvious, therefore, that the jury allowed the plaintiff only a limited portion of the damages he claimed to have sustained by reason of his having been deprived of the use of his mining equipment. "A verdict for damages cannot be set aside upon the ground that the evidence afforded no basis for ascertainment of its amount when the facts, circumstances, and data justify the inference that the amount found is a just and reasonable compensation for the injury suffered." *Hurxthal v. St. Lawrence Boom & Mfg. Co.,* 65 W. Va. 346, syl. 5, 64 S. E. 355. See also *Anchor Co. v. Adams,* 139 Va. 388, 124 S. E. 438; *Jefferson Standard Life Ins. Co. v. Hedrick,* 181 Va. 824, 27 S. E. 2d 198; 25 C.J.S., Damages, Section 162, pages 813-815. Under all the circumstances we are unable to say that the jury verdict, approved by the trial court, was not justified by the proof.

For the reasons stated herein, the judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*