No. 46,024

J. A. TOBIN CONSTRUCTION COMPANY, a Corporation, *Appellee,* v. JEROME E. HOLTZMAN and THE MARYLAND CASUALTY COMPANY, *Appellants.*

(485 P. 2d 1276)

Opinion filed June 12, 1971.

*Marion W. Chipman,* of Olathe, argued the cause and was on the brief for the appellants.

*Max Logan,* of Payne and Jones, Chartered, of Olathe, argued the cause, and *H. Thomas Payne,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by J. A. Tobin Construction Company, a corporation (hereafter referred to as Tobin), to recover on a bond given to procure a restraining order granted to the de-

fendants as provided in K. S. A. 60-902 and 60-903. The defendant, Jerome E. Holtzman, and others, were the plaintiffs in a prior suit to procure the restraining order. Holtzman was the principal on the bond and the Maryland Casualty Company, also a defendant herein, his surety. The trial court, after hearing the matter, found the restraining order was wrongfully obtained. Damages were awarded to Tobin in the amount of $10,000, the limit of liability on the bond, and the defendants have duly perfected an appeal.

The questions on appeal are: (1) Whether the trial court adopted a correct theory of the law in holding Tobin was entitled under the bond to recover the reasonable rental value of its quarrying machinery and equipment for the period of wrongful restraint; and (2) whether the trial court erred in holding Holtzman's counterclaim barred by the statute of limitations.

On the 25th day of February, 1966, Tobin acquired a sublease from Union Quarries, who held an assignment of a lease from Union Construction Company on land owned by Magdalen E. Tobin in Aubry Township, Johnson County, Kansas, for use as a rock quarry. The quarrying operation was the subject of an appeal to this court in *Union Quarries, Inc. v. Board of County Commissioners*, 206 Kan. 268, 478 P. 2d 181.

On April 6, 1966, at the time suit was filed herein, Jerome E. Holtzman and Joan Holtzman, his wife, had entered into a real estate contract with Joseph W. Sharp and Marguerite Sharp, his wife, to purchase a parcel of real estate adjoining the property upon which Tobin conducted rock quarrying operations. The petition filed by the Holtzmans and the Sharps sought to procure a restraining order and to permanently enjoin Tobin from quarrying operations upon the land Tobin held under lease. They also petitioned the court for an allowance of damages in the amount of $7,500 allegedly occasioned to their land as a result of quarrying operations conducted by Tobin.

On April 7, 1966, a temporary restraining order was issued to Holtzman, *ex parte*, provided that he execute and file with the clerk a bond in the sum of $1,000. The bond was posted on the same day with Holtzman as principal and Maryland Casualty as surety.

On April 11, 1966, Tobin filed a motion requesting vacation of the temporary restraining order, or an increase in the amount of the bond.

On April 12, 1966, Holtzman was ordered to furnish an additional bond in the amount of $9,000, or the restraining order would be dissolved. On the same day the additional bond was furnished, with Holtzman as principal and Maryland Casualty as surety.

On the 14th and 15th days of April, 1966, a hearing was conducted by the trial court concerning the dissolution of the restraining order. At the conclusion of the hearing the court ordered that Holtzman submit additional evidence to support his allegation that injunctive relief was required, or in the alternative, that Holtzman provide additional bond. In the event that Holtzman did not desire to produce additional evidence or to furnish additional bond, it was directed that the restraining order be dissolved.

Holtzman did not provide the additional evidence, nor an additional bond, and the restraining order was dissolved.

On May 27, 1966, the court determined Holtzman had an adequate remedy at law for any damage occasioned to his property and that the temporary injunction should be denied.

On October 7, 1966, Holtzman moved the court for an order dismissing his action for damages without prejudice, whereupon his action was dismissed by the court without prejudice on January 4, 1967.

On the 11th day of March, 1968, the court conducted a hearing concerning the issuance of a permanent injunction against Tobin, and by journal entry filed on March 15, 1968, Holtzman was denied any injunctive relief. Accordingly, judgment was entered in favor of Tobin on all counts of the plaintiff's petition in the injunction action, thus establishing the original restraining order against Tobin to have been wrongfully obtained.

On March 29, 1968, Tobin filed its petition in the case at bar requesting damages against Holtzman and his wife, Sharp and his wife, and the Maryland Casualty Company for the sum of $21,000, plus costs and attorneys' fees alleged to have been suffered as a result of the wrongful enjoinment and restraint of Tobin by the previous injunction action.

To this petition the Sharps filed a separate answer. Maryland Casualty filed a separate answer, and Holtzman and his wife filed an answer and counterclaim wherein they sought to set off the damages occasioned by them as a result of the quarrying operations conducted by Tobin. Tobin replied to the counterclaim.

On April 10, 1969, the trial court, upon Tobin's motion, deter-

mined that the counterclaim was barred, both as a counterclaim and as a setoff. It further held the only issue left for determination by the court was the amount of damages suffered by Tobin as a result of the wrongful restraining order obtained by Holtzman in the prior action. The court's order was journalized and filed on May 6, 1969.

In the meantime, while the proceedings in the case at bar were being had before the trial court, the parties were engaged in pretrial discovery. A part of that pretrial discovery consisted of written interrogatories propounded to Tobin. Answers to these interrogatories show that Tobin did not lease any of its equipment; that Tobin was shut down by the restraining order from April 7, 1966, through April 15, 1966, with no time being charged for Saturday or Sunday; that no rock was sold by Tobin between the dates of April 7, 1966, and April 15, 1966; and that Tobin moved its equipment off the site on April 20, 1966. Tobin's answer to the interrogatories further itemized damages claimed as follows: Loss of use of equipment and rentals on equipment $13,643.25; loss of profits $1,806.25; loss of time by employees $473.22; automobile mileage $25; and attorneys' fees $3,825.

The case was tried on the 25th day of June, 1969. Counsel in his opening statement on behalf of Tobin announced that Tobin would not claim any damage for loss of profit, stating:

". . . it would appear to us, Your Honor, that based upon the evidence that we have and the law that we have found, that the item of some $2,000 for loss of profit may not be justifiable under the law. Quite frankly, Your Honor, I think the evidence will be that none of the material, up to that period of time, was sold. And there is really no way for us to determine the true market value of gravel. We felt that it was a speculative measure and a speculative approach and we are going to have to actually just abandon it."

It was announced Tobin's claim for damages would be based upon the reasonable rental value of the equipment, plus attorneys' fees, court costs and expenses.

Tobin's evidence substantiated the items of damage claimed in the answer to the interrogatories, with the exception of the item of profits, concerning which there was no evidence.

The only item of damages to which Holtzman objected was the loss of use of equipment, as an element of damages. The trial court overruled Holtzman's objection and held that the only way to determine Tobin's damages for the loss of use of equipment would be to base it upon the rental value of the equipment during

the time it was shut down at the place in question by the wrongful restraint.

After a full hearing the trial court took the case under advisement and on June 25, 1969, entered judgment against Holtzman, Maryland Casualty Company, Joan Holtzman, Joseph W. Sharp and Marguerite Sharp for the sum of $10,186.94 plus the costs of the action. After a series of motions the trial court reduced the amount of judgment to the limit of the bond and dismissed the action against all defendants, except Holtzman and the Maryland Casualty Company against whom judgment was finally entered for $10,000 on December 23, 1969.

The evidence in the record is sufficient to support the trial court's finding that it was not feasible to move Tobin's equipment from the quarrying site for the period it was shut down because Tobin had no other place to move the equipment, and the time required in moving such heavy equipment was too extensive.

The evidence established Tobin was shut down 6¼ days by reason of the restraining order which was wrongfully obtained; that there were 22,835.55 tons of rock stockpiled on April 7, 1966, the date that the restraining order became effective; and that Tobin had over 20,000 tons of rock stockpiled when it moved its equipment off the site. In answer to interrogatories Tobin admitted that from April 16 to June 13, 1966, it sold only 3,365.70 tons of rock.

While Tobin requested damages in the amount of $13,430.75 for the loss of use of its equipment, that being the fair rental value of such equipment on a *daily* basis for the 6¼ days it could not be used, the trial court found that Tobin was entitled to only $7,006 based on the *weekly* rental value of such equipment. The weekly rate was based on 6 days use.

The appellant first contends the trial court adopted an erroneous theory of law in holding that Tobin was entitled to recover the reasonable rental value of the use of its quarrying machinery and equipment for the time quarrying operations were wrongfully restrained.

The statute, K. S. A. 60-903, provides that a bond may, at the discretion of the trial court, be required upon the issuance of a restraining order, if it appears that damage may result to the party restrained.

Both the bond posted on April 7, 1968, in the sum of $1,000, and the additional bond posted on April 12, 1968, in the sum of

$9,000, secured Tobin as to damages that were caused by reason of the wrongful restraint. Each of the bonds posted bound Holtzman and Maryland Casualty Company in the following words:

". . . to pay, to any party who may be found to have been wrongfully enjoined or restrained thereby, all costs and damages which may be incurred or suffered by reason of such wrongful restraint, not exceeding, however the amount [of the bond]."

The parties are in agreement as to the general law applicable to actions upon bonds given to procure a restraining order or temporary injunction, when it is ultimately determined that the temporary restraint imposed was wrongful.

The damages recoverable in an action on an injunction bond include compensation for all actual damage sustained by reason of the wrongful issuance of the injunction; that is, such damage as is the direct, natural and proximate result of the injunction. (*Clay Center v. Williamson,* 79 Kan. 485, 100 Pac. 59; *Hyler v. Wheeler,* 240 S. C. 386, 126 S. E. 2d 173, 95 A. L. R. 2d 1182; 43 C. J. S., Injunctions, § 309, p. 1091; and 42 Am. Jur. 2d, Injunctions, § 370, p. 1186.)

The appellants rely upon what they term an admission by Tobin in the interrogatories to the effect that, if Tobin were permitted to operate during the 6¼ days the temporary restraint was imposed, its profits would have been $1,806.25. They urge that Tobin's own estimate of profits is the proper measure of damages.

Tobin, on the other hand, asserts the profit item claimed in the answer to an interrogatory represented the estimated loss of the use of the land, separate from the loss of the use of the quarrying equipment which was itemized in the interrogatories as a loss of $13,643.25. Tobin points out the rock which would have been quarried by operation of the crusher for the period of temporary restraint imposed remained a part of the land. Tobin also calls our attention to the fact that the appellants objected to the item on loss of profit as being conjectural, and Tobin, recognizing the validity of such argument, removed this element from the court's consideration by conceding its conjectural nature.

The appellants argue:

"There is not one scintilla of evidence that Tobin Construction could have sold, during the six and a quarter days that they were restrained, any amount of rock whatsover. It could certainly be safely presumed that they would have sold no more rock in those six and a quarter days than the rock that they sold in the two months immediately after the restraining order was lifted. Tobin

Construction was not in the business of renting equipment. They were in the business of quarrying and selling rock. They have simply failed to show any evidence whatsoever that if they had not been restrained that they would have earned a sum equal to the $10,000.00 damages assessed against Holtzman and Maryland Casualty. . . ."

The record does not disclose how many tons of crushed rock would have been added to the stockpile of Tobin each day the equipment was rendered idle for the period of temporary restraint imposed. The property upon which Tobin had a lease contained a natural lake of stone or rock that was rare in type and nature. It meets the specifications of the State Highway Commission of Kansas, and finding quantities of such rock was said to be rare. The quarrying of rock on the property commenced in 1950, and sale or use of the stockpiled rock in Tobin's business was inevitable.

Generally the loss of use of property is a compensable element of damages in the state of Kansas. The ownership of an item of property carries with it the right to use, or to control the use of, that item of property. Therefore, where one has been wrongfully deprived of the use of an item of property there has been a loss of one of the valuable rights or interests in property—the right to use the property. (*Monroe v. Lattin*, 25 Kan. 351; *Anderson v. Rexroad*, 180 Kan. 505, 306 P. 2d 137; and 22 Am. Jur. 2d, Damages, § 152, p. 220.)

In *Anderson v. Rexroad*, supra, it was said:

"Generally speaking, there may be a recovery for the loss of use of property, providing the use is a lawful one and the damages are established with reasonable certainty (25 C. J. S., Damages, § 41, pp. 514, 515), and, where property is attached to land, such as was plaintiffs' dwelling, and it is damaged or destroyed, the owner is entitled to damages, which may not exceed the value of the property, and for his loss of use or for loss of rental up to the time when, with ordinary diligence, it could have been restored, whether in fact it was restored or not. The value of its use is not the mere value of its intended use but of its present potential use whether availed of by its owner or not (15 Am. Jur., Damages, §§ 129, 131, 132, pp. 537, 540, 541). . . ." (p. 513.)

Here the evidence clearly established that the loss of use for the period of temporary restraint imposed was occasioned by the existence of the restraining order. The order restrained Tobin from "quarrying or excavating operations." The trial court's finding that there was a causal relationship between the restraining order and the fact that Tobin could not utilize his equipment was supported by evidence.

The injunction defendant is in general entitled to recover rental

value of the property, or the value of its use and occupation, which was lost because of the wrongful restraint. (43 C. J. S., Injunctions, § 315, pp. 1094, 1095; see, also, High, Law of Injunctions [4th Ed.] § 1673, p. 1624; 42 Am. Jur. 2d, Injunctions, § 70, p. 1186; and 22 Am. Jur. 2d, Damages, § 155, p. 223.) The general rule, well supported by authority and the fairest that could be adopted, is that damages for the wrongful deprivation of the use of specific property are to be measured by its rental value. (*Anderson v. Rexroad,* supra; and *McCoy v. Fleming,* 153 Kan. 780, 113 P. 2d 1074.) The rental value has been accepted as a fair means of determining the value of loss of use in other jurisdictions. (See *Harnstrom v. Anderson Electric Car Co.,* 210 Ill. App. 395; *Slattery v. Tillman,* 197 Mich. 349, 163 N. W. 938; and *Kunkel v. Cohagen,* 151 Neb. 774, 39 N. W. 2d 609.)

Damages determined on the basis of the rental value of several items of heavy mining equipment made idle as a result of an injunction wrongfully obtained were upheld in an action on an injunction bond in *State ex rel. v. Freeport Coal Co.* (June, 1960) 145 W. Va. 343, 115 S. E. 2d 164, where many cases from other jurisdictions are accumulated. In the opinion the court said:

"It is obvious that the plaintiff's heavy mining equipment was costly; that it was rendered idle temporarily; and that the plaintiff was necessarily deprived of its use until the several items thereof could be moved and put to use on other projects. It is apparent from the testimony that the plaintiff acted with reasonable diligence in finding use for the equipment after his coal mining operations were stopped by the injunction, and that in this respect he exercised due diligence to minimize the damages.

"The equipment was made idle as a direct and proximate result of the injunction, and the plaintiff is entitled to recover in this action a sum sufficient to compensate him for the temporary loss of the use of the equipment. In testimony offered in his behalf, the plaintiff asserted a claim of $53,139.75 as the 'rental value' of the several items of equipment, made idle as a result of the injunction. . . ." (pp. 352, 353.)

Tobin's foreman testified it was not feasible to move the equipment or to use the equipment elsewhere because of the time element (the original order enjoined Tobin "for the next seven days hereafter") and because there was no other place to use this equipment. His testimony was supported by another witness who stated it was not feasible that the equipment be moved elsewhere. The trial court made a specific finding in favor of Tobin on this point.

While Tobin owned the equipment used in his quarrying operations, it was established by the testimony of two experts that such

equipment was commonly rented in the industry. These experts testified as to the precise rental value of each item of equipment used by Tobin in his quarrying operations, both on a daily and a weekly basis. In *Hyler v. Wheeler*, supra, it was said an accepted measure of the value of the use of specific property capable of being rented is its rental value.

We conclude the trial court did not err in allowing the reasonable rental value of the use of Tobin's quarrying machinery and equipment for the period of temporary restraint wrongfully imposed.

On the second point asserted by the appellants, the trial court did not err in holding Holtzman's counterclaim barred as a setoff by the statute of limitations.

The appellants contend their counterclaim was not barred by the statute of limitations, K. S. A. 60-513 (1) because the claim arose out of the transaction, or was connected with the subject of the action. K. S. A. 60-213 (*d*) provides:

"(*d*) *Effect of death or limitations.* When cross demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or crossclaim could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other or by reason of the statute of limitations if arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim or connected with the subject of the action; but the two demands must be deemed compensated so far as they equal each other."

The cross-claim filed by the Holtzmans in the present action fails to meet the requirements of the above statutory provision. To clarify this point it is necessary to review the dates involved. The original tort that formed the basis of the original petition filed by the Holtzman's in the injunction action, and reasserted in the counterclaim, alleges that the tortious activity of Tobin took place on or about February 28, 1966. That petition was filed by Holtzman and other plaintiffs on April 6, 1966. The restraining order was obtained on April 7, 1966, and ceased to have an active existence on April 15, 1966. The cause of action seeking damages by Holtzman and the other plaintiffs was voluntarily dismissed as per journal entry of dismissal dated January 4, 1967, and the injunction action was finally and completely decided on March 15, 1968. On that date it was finally adjudicated that Holtzman's request for injunctive relief be denied, thereby establishing that the temporary restraint was wrongfully imposed. On that date, March 15, 1968, Tobin's cause of action on the bond first arose. Tobin filed his

damage action on the injunction bond March 29, 1968, and the answer and counterclaim of Holtzman was not filed until April 16, 1968.

The statute, 60-213 (*d*), *supra*, requires that before the cross-claim can be asserted the two demands, the plaintiff's demand and the defendants' demand, must have coexisted between persons under such circumstances that if one had brought an action against the other, a counterclaim could have been set up. In all cases this prerequisite requires that at some point in time there must be a coexistence of the two claims together. If the cross-claim asserted is barred prior to the existence of the claim asserted in the damage action by Tobin, then the statute does not allow the assertion of the cross-claim, since the two claims at no time coexisted in time.

This point was ruled on in *O'Neil v. Eppler*, 99 Kan. 493, 162 Pac. 311, where the court held:

"Under section 102 of the civil code, parties holding cross-demands against each other, under such circumstances that if one had brought a suit against the other a counterclaim or setoff could have been set up, will not be deprived of the benefit of them by reason of the statute of limitations, but if the demand of one party becomes completely barred before the demand of the other comes into existence the barred demand is not available as a setoff against the live demand." (Syl. ¶ 1.)

*O'Neil v. Eppler*, supra, of course, represents the law as it existed prior to the new code of civil procedure, January 1, 1964, but the practical effect of the changes made by amendments in the new code is substantially the same as under the former statute. (Gard, Kansas Code of Civil Procedure Annotated, § 60-213 [*d*], p. 62.) This has been substantiated in *Rochester American Ins. Co. v. Cassell Truck Lines*, 195 Kan. 51, 402 P. 2d 782. Therefore, the Kansas law with regard to the necessity that the cross-demand and the demand asserted against which it is claimed as a pure defense must have some coexistence in time is well established both by the statute (60-213 [*d*], *supra*) and by the case law decided under it.

The question then becomes one of whether the claim asserted as a cross-demand in this action ever coexisted in time with the action asserted by Tobin herein on the injunction bond. The basic cause of action asserted in the cross-demand allegedly occurred on February 28, 1966. Clearly, under K. S. A. 60-513 (1) this is an action for trespass upon real property which must be brought within two years. The two-year statute of limitations ran on February 28, 1968. The original petition by Holtzman and others was clearly

filed within the period of the statute of limitations, but the action was thereafter voluntarily dismissed on January 4, 1967, in such a way that the period of limitations was in no way extended. Therefore, the statute of limitations ran on the cross-demand February 28, 1968. No cause of action existed on the injunction bond prior to March 15, 1968. (*Harlow v. Mason*, 98 Kan. 353, 157 Pac. 1175.) The counterclaim could not be asserted as a setoff because it was barred February 28, 1968, fifteen days prior to the time Tobin's cause of action arose on the injunction bond. Therefore, the two claims never coexisted to fulfill the condition of K. S. A. 60-213 (*d*).

The judgment of the lower court is affirmed.