No. 111,392

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT S. WING, STEVEN LONG, WILLIAM P. YOUNG, and JOHN J. SIMMA,
as Representatives of a Class Consisting of the Members of International Association of
Fire Fighters, Local No. 64,
*Appellees*,

v.

THE CITY OF EDWARDSVILLE, KANSAS, and MICHAEL WEBB,
*Appellants.*

SYLLABUS BY THE COURT

Under K.S.A. 75-4321(c), a city that chooses to opt out of the Public Employer-Employee Relations Act cannot do so at the end of the budget year in progress when it votes to opt out. Instead, it must wait until the end of the next complete budget year to do so.

Appeal from Wyandotte District Court; DANIEL A. DUNCAN, judge. Opinion filed December 19, 2014. Affirmed.

*Carl F. Gallagher* and *Robert J. Wonnell*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Scott L. Brown*, of Blake & Uhlig, P.A., of Kansas City, for appellees.

Before POWELL, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: The City of Edwardsville, Kansas, opted into the Public Employer-Employee Relations Act in 1999. Doing so gave the City's employees a specific right to negotiate with their employers over conditions of employment. See *State Dept. of*

*Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 292, 894 P.2d 777 (1995).

In August 2013, the City voted to opt out of the Act, which is allowed under K.S.A 75-4321(c). The statute provides that a public employer covered by the Act may vote to opt out but that the vote will not take effect until "the termination of the next complete budget year following such vote." The City considered its vote effective at the end of the 2013 budget year and in January 2014 unilaterally imposed new employment conditions on local fire-department employees. The union-member employees obtained a temporary injunction ordering the City to comply with its obligations under the Act, and the City has appealed the order granting the injunction.

The City's appeal is not well taken as the employees' claim meets all of the standard tests for granting a temporary injunction. See *Downtown Bar and Grill v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012). The employees were likely to succeed on the merits of their claim under the clear language of K.S.A 75-4321(c), which says the City could not stop following the Act until the next complete budget year following the vote— the 2014 budget year—had ended. In addition, the court had substantial evidence that the employees would suffer irreparable injury if the City stopped following the Act, that the threatened injury outweighed whatever damage the proposed injunction might cause, and that the injunction would not be adverse to the public interest. An injunction was also the appropriate remedy in this case because damages would have been speculative and inadequate compensation for the continued loss of bargaining rights. We therefore affirm the district court's grant of a temporary injunction.

FACTUAL AND PROCEDURAL BACKGROUND

Edwardsville opted into the Public Employer-Employee Relations Act by enacting Resolution No. 1999-20 on October 25, 1999. On August 26, 2013, the City voted to opt

2

out of the Act under K.S.A. 75-4321(c), which provides that an opt-out does not take effect until the end "of the next complete budget year" after the vote to opt out:

> "Once an election has been made to bring the public employer under the provisions of this act it continues in effect unless rescinded by a majority vote of all members of the governing body. No vote to rescind shall take effect until the termination of the next complete budget year following such vote."

The City continued to follow the Act for just over 4 months after its opt-out vote, until the end of its 2013 budget year (December 31, 2013).

In January 2014, the City stopped recognizing the bargaining representatives for the Edwardsville Fire Department, Local No. 64 of the International Association of Fire Fighters. Until that time, the union had been the exclusive bargaining agent for employees at the rank of captain or lower. The employee members of the union filed a petition in the Wyandotte County District Court asking the court to enjoin the City from violating the Act and alleging that the vote to rescind was to take effect January 1, 2015, not January 1, 2014. The employees obtained a Temporary Restraining Order ordering the City to "comply with its obligations under [the Act], K.S.A. 75-4321, *et seq*." In support of its motion for a temporary restraining order, the employees had attached an affidavit from Robert Wing, the president of the union, stating that the City's refusal to negotiate with the union caused the employees irreparable harm—namely, changes to wages and other conditions of employment.

The City moved to set aside the temporary restraining order on January 21, 2014. In opposing the City's motion, the employees provided the court with copies of letters from the City to the employees. The letters, which took effect January 5, 2014, set out the compensation rates for working as an active captain or active driver as well as incentive-pay guidelines and leave benefits. Those terms had not been negotiated with the union.

At a hearing on the motion to set aside the temporary restraining order, the employees moved orally for a temporary injunction to prohibit the City from disregarding its bargaining obligations under the Act. The district court granted a temporary injunction and informed the City that it was prohibited from decertifying the union and was required to meet its obligations under the Act. The court's written journal entry provided:

"1. Plaintiff's oral motion for temporary injunction is granted and the Defendants shall comply with its obligations under [the Act], K.S.A. § 75-4321 as stated in the Temporary Restraining Order.

"2. The Court finds that the Plaintiff is likely to prevail on the merits.

"3. The Court finds that irreparable harm will happen if the injunction is not entered.

"4. Defendants are prohibited from de-certifying the Members of International Association of Fire Fighters, Local No. 64."

The City has appealed to this court.

ANALYSIS

*The District Court Did Not Abuse Its Discretion in Issuing a Temporary Injunction.*

An injunction is a court order to do or refrain from doing a particular act. K.S.A. 60-901. The purpose of a temporary injunction is to preserve the status quo until the court can determine whether it should grant a permanent injunction. *State v. Alston*, 256 Kan. 571, 579, 887 P.2d 681 (1994). A party seeking a temporary injunction must make a five-part showing:

4

"(1) a substantial likelihood of eventually prevailing on the merits; (2) a reasonable probability of suffering irreparable future injury; (3) the lack of . . . an adequate remedy at law; (4) [that] the threat of suffering injury outweighs whatever damage the proposed injunction may cause the opposing party; (5) and [that] the impact of issuing the injunction will not be adverse to the public interest." *Downtown Bar and Grill*, 294 Kan. at 191.

We review the district court's decision to grant the injunction for an abuse of its discretion but have unlimited review of the legal conclusions behind the decision. 294 Kan. at 191-92. Where the district court issued findings of fact, we determine whether those findings were supported by substantial evidence. *State ex rel. State Bd. of Healing Arts v. Thomas*, 33 Kan. App. 2d 73, 79, 97 P.3d 512 (2004), *rev. denied* 279 Kan. 1007 (2005); *Barnesco, Inc. v. Liftco, L.L.C.*, No. 98,867, 2008 WL 4291634, at *2 (Kan. App. 2008) (unpublished opinion).

Here, the district court expressly found that the employees were likely to succeed in proving their entitlement to another year of benefits under the Act and that the employees would suffer irreparable harm if the court did not order the City to comply with the Act. On appeal, the City argues that the union failed to establish the factors required for an injunction and that the district court failed to follow statutory requirements when granting the injunction.

We begin our analysis with the tests a plaintiff must meet to obtain a temporary injunction.

1. *The Employees Are Substantially Likely to Succeed on the Merits of Their Claim.*

To obtain a temporary injunction, a party must show a "substantial likelihood" of eventually prevailing on the merits. *Idbeis v. Wichita Surgical Specialists, P.A.*, 285 Kan.

485, 491, 173 P.3d 642 (2007). We review the district court's conclusion that the employees would prevail independently, without any required deference to the district court. See *Downtown Bar and Grill*, 294 Kan. at 192.

The merits of this case come down to a simple question: Was the City entitled to quit following the Public Employer-Employee Relations Act at the end of its 2013 budget year? Or did it have to wait until the end of the 2014 budget year? Answering that question requires only that we look at the text of K.S.A. 75-4321.

That text seems especially clear—a vote to opt out of the Act's provisions cannot "take effect until the termination of the next complete budget year following such vote." At the time the vote was taken, the City was in the midst of its 2013 budget year (its budget years tracking the normal January-December calendar year). So "the next complete budget year following [the] vote" was 2014, and the City's action could not take effect until the *end* of 2014.

The City makes no coherent argument that the statute could be interpreted to allow what it did. The City bases its argument on the meaning of the word "next":

> "Presumably, the Plaintiffs are focusing on the word 'next' in the statute. *Black's Law Dictionary* defines 'next' as: nearest, closest, or immediate following. Using any of these three definitions clearly provide that after a municipality has voted to opt out of [the Public Employee Relations Act], it will not take effect until the budget year they are in, reaches the nearest, closest or immediately following completion date. That is exactly what Defendant City of Edwardsville did. After the vote in August of 2013, the City waited until the budget year was complete, on December 31, 2013, to begin operating outside of [the Act]."

The City is correct that Black's Law Dictionary, in its sixth edition, defined "next" as "[n]earest; closest; immediately following." Black's Law Dictionary 1043 (6th ed. 1990).

6

We have no quarrel with that definition. See American Heritage Dictionary 1189 (5th ed. 2011) (also defining "next" as "immediately following"). But the City ignores altogether other words in the statute, like "complete," "budget year," and "following."

It's the combination of words here that makes the legislature's intent unmistakably clear. The statute doesn't say that the vote to rescind may take effect in the next budget year. It says that it may not take effect until the *termination* of the *next complete budget year*.

We cannot envision any way in which the legislature could have been more definitive. In fact, this is a case in which the legislature has used redundant language to eliminate all doubt. Had it said that the vote may not take effect until the end of the "next budget year," that would have meant the same thing. But the legislature added the word "complete" and said that the vote could not take effect until the end of the "next complete budget year."

Ordinarily, courts presume that the legislature does not use redundant language, and we try to give meaning to every word in the statute. See *State v. Roeder*, 300 Kan. ___, 336 P.3d 831, 848 (2014); Scalia & Garner, Reading Law: The Interpretation of Legal Texts, pp. 174-79 (2012). But sometimes the legislature uses redundant language to avoid any possible uncertainty about the meaning of a statute. See Popkin, Materials on Legislation: Political Language and the Political Process, p. 223 (5th ed. 2009); Reading Law, pp. 176-78. This is such a case.

The City's vote took place in August 2013, which was during the 2013 budget year. That vote cannot take effect until the end of the next (complete) budget year, which is 2014. The City acted illegally by acting sooner. Thus, the employees have shown a substantial likelihood of success on the merits of this dispute.

7

## 2. *An Action at Law Would Not Provide an Adequate Remedy.*

As a general rule, when a party can obtain a full and adequate legal remedy—such as damages—an injunction is not appropriate. See *Board of Reno County Comm'rs v. Asset Mgmt. & Marketing L.L.C.*, 28 Kan. App. 2d 501, 506-07, 18 P.3d 286 (2001) (citing *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, Syl. ¶ 10, 726 P.2d 287 [1986]). But the City has not argued that the employees had an adequate legal remedy.

Indeed, legal remedies are not adequate when damages would be speculative, when the violation to be addressed is continuous or ongoing, and when damages can't provide adequate compensation for a party's injuries. 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2944 (2013). Here it is impossible to calculate what the employees would lose as the result of being denied the right to bargain, and the City's refusal to bargain with the employees is a continuing violation of K.S.A 75-4321(c) and the employees' bargaining rights. See *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 65, 209 P.3d 722 (2009) (noting that legal remedies provide inadequate redress for ongoing violations); *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 894, 75 P.3d 278 (2003) (noting right to injunctive relief for ongoing violation of restrictive real-estate covenant). In addition, delays in bargaining have a chilling effect on union participation, and damages would not provide adequate compensation for this effect, which ultimately harms the union's employee members. See *Allee v. Medrano*, 416 U.S. 802, 814-15, 94 S. Ct. 2191, 40 L. Ed. 2d 566 (1974); *Small v. Avanti Health Systems, LLC*, 661 F.3d 1180, 1194 (9th Cir. 2011); *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 500-01 (7th Cir. 2008); *N.L.R.B. v Electro-Voice, Inc.*, 83 F.3d 1559, 1572-73 (7th Cir. 1996). As a result, damages would not provide an adequate legal remedy in this case.

3. *There Is a Reasonable Probability of Irreparable Future Harm to the Employees.*

The City contends that the employees presented no evidence that they would suffer irreparable harm without the injunction. When the challenge is to a lack of evidence, we look to see whether the district court's findings were supported by substantial evidence, which is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014); *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013); *Barnesco*, 2008 WL 4291634, at *2.

The district court did not lack evidence. It had copies of letters from the City unilaterally setting out the compensation for working as an active captain or active driver, incentive-pay guidelines, and leave benefits for fire-department employees as of January 5, 2014. The district court also had an affidavit from Robert Wing, stating that the City's refusal to negotiate with the employees' union led to the changes to wages and other work conditions. The letters and affidavit were evidence that the City was denying the employees their collective-bargaining rights by acting to unilaterally change policies that affected the conditions of employment at the fire department in direct violation of the provisions of the Act.

Other courts have found irreparable harm in the loss of collective-bargaining rights. See *Small*, 661 F.3d at 1194; *Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 369 (2d Cir. 2001); *Electro-Voice*, 83 F.3d at 1572-73; *Blyer ex rel. N.L.R.B. v. One Stop Kosher Supermarket, Inc.*, 720 F. Supp. 2d 221, 227 (E.D.N.Y. 2010). Not only are the employees unable to bargain collectively, but support for the union through which they have chosen to bargain collectively is discouraged under these conditions. That too constitutes irreparable harm. See *Franks Bros. Co. v. National Labor Relations Board*, 321 U.S. 702, 704, 64 S. Ct. 817, 88 L. Ed. 1020 (1944); *Small*, 661

F.3d at 1194; *Frankl v. HTH Corp.*, 650 F.3d 1334, 1362-63 (9th Cir. 2011); *Lineback*, 546 F.3d at 500; *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 299 (7th Cir. 2001); *Hoffman ex rel. N.L.R.B.*, 247 F.3d at 369; *Electro-Voice, Inc.*, 83 F.3d at 1572-73. In sum, the letters and affidavit showing that the City was denying the employees their collective-bargaining rights were substantial evidence of irreparable harm to the employees.

4. *The Threat of Injury to the Employees Outweighs the Damage the City May Suffer.*

The City contends that the employees presented no evidence that the threatened injury to the employees outweighs the damage the injunction might cause. But the letters and affidavit showed an injury to the employees—the loss of the right to bargain—and the City has not explained what damages it would suffer if the injunction were upheld.

The City also argues that the district court failed to make a finding on this point. But it made no objection to the district court about a lack of findings, and in such cases we presume that the district court found all the facts needed to support its ruling so long as the record supports that presumption. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012); *Empire Mfg. Co. v. Empire Candle, Inc.*, 273 Kan. 72, 87, 41 P.3d 798 (2002). The evidence here that the employees lost the right to bargain collectively supports the presumption that the district court made a factual finding that the threat of injury to the employees outweighed the damage the City might suffer (even though the court didn't expressly state this). It's also substantial evidence in support of that finding.

5. *The Injunction Will Not Be Adverse to the Public Interest.*

The City again challenges the district court's failure to make an explicit finding that entering the injunction would not be adverse to the public interest. Once again, though, substantial evidence in our record supports such a finding, and we presume that the district court made the findings needed to support its ruling.

As the employees note, correcting a violation of the law is in the public interest. And in this case, violating the Act is particularly harmful to the public because the Act was specifically enacted to develop harmonious and cooperative relationships between the government and its employees and to prevent the potential for conflict and interruption of government operations that can be caused by the denial of the right to organize:

> "(a) The legislature hereby finds and declares that:
>
> (1) The people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employees;
>
> (2) the denial by some public employers of the right of public employees to organize and the refusal by some to accept the principle and procedure of full communication between public employers and public employee organizations can lead to various forms of strife and unrest; [and]
>
> (3) the state has a basic obligation to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government . . . ." K.S.A. 75-4321.

The Act protects these public interests by requiring that public employers who opt into the Act follow its terms. As a result, the evidence in the record indicating that the

11

City violated the terms of the Act (by unilaterally changing conditions of employment while the Act was still in effect) both supports the presumption that the district court found that prohibiting the City from violating the Act would not be against the public interest and is substantial evidence supporting that finding.

*The District Court Complied with the Specificity Requirements for Injunctions Set Out in K.S.A. 2013 Supp. 60-906.*

The City also makes two arguments that the district court did not comply with specific provisions of the Kansas injunction statutes. The City's first such claim is that the order granting the preliminary injunction was not sufficiently clear to meet the requirements of K.S.A. 2013 Supp. 60-906, which provides that orders granting injunctions be specific and detailed. The statute says that orders must set forth the reasons for the injunction and describe the acts it restrains in reasonable detail:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained . . . ." K.S.A. 2013 Supp. 60-906.

The City contends that the district court neither gave reasons for the injunction nor specifically described the acts the injunction would restrain.

But the district court said that the employees would likely succeed on the merits and that irreparable harm would occur if the injunction were denied. It also specifically described the acts the injunction would restrain. The journal entry expressly ordered that the City could not decertify the union and stated that the City must "comply with its obligations under [the Act,] K.S.A. § 75-4321."

Although the City didn't mention it, caselaw interpreting a similar federal rule on injunctive relief counsels that an injunction simply telling a party to comply with the law isn't specific enough. See Fed. R. Civ. Proc. 65(d); *United States v. Phillip Morris USA, Inc.*, 566 F.3d 1095, 1137-38 (D.C. Cir. 2009); *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009). But the specificity rules for injunctions are not rigidly applied, *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013), and even an obey-the-law order may be sufficient "if it relates the enjoined violations to the context of the case." *Phillip Morris USA, Inc.*, 566 F.3d at 1137. Here, there was no dispute about what the City had to do under the Act—the dispute was simply whether the City's obligation to comply with the Act had expired. Accordingly, the district court sufficiently tied its order to the context of the case by answering the only disputed question between the parties. Even on appeal, the City has not given an example of any situation that might cause it uncertainty regarding its obligations under the temporary injunction. The district court's temporary injunction was sufficient under K.S.A. 2013 Supp. 60-906.

*The District Court Complied with the Notice and Bond Requirements Set Out in K.S.A. 60-905.*

The City's second claim regarding specific requirements found in the injunction statutes is that the district court granted the injunction without following the notice and bond requirements for injunctions. It claims it didn't receive notice of the injunction and that the employees didn't post a bond as required under K.S.A. 60-905. That statute requires reasonable notice before a temporary injunction is issued and, in most cases, a bond to protect the enjoined party in the event it is later determined the injunction should not have been entered:

> "(a) *Notice and hearing.* No temporary injunction shall be granted until after reasonable notice to the party to be enjoined and an opportunity to be heard.

"(b) *Bond.* Unless otherwise provided by statute or this section, no temporary injunction shall operate unless the party obtaining the same shall give an undertaking with one or more sufficient sureties in an amount fixed and approved by the judge of the court, securing to the party injured the damages such injured party may sustain including attorney fees if it be finally determined that the injunction should not have been granted. Neither the state nor any of its agencies shall be required to give an undertaking with one or more sufficient sureties in order to be granted a temporary injunction. For any other party, at the discretion of the judge, the undertaking required by this subsection may be waived." K.S.A. 60-905.

The City had reasonable notice of the temporary injunction: the petition, filed nearly a month before the court granted the injunction, asked the court to "enjoin[ ] the Defendants from further violat[ing] the Act." The City was also aware of the temporary restraining order—which appears to have been granted on the same bases as the temporary injunction—well before the district court granted the temporary injunction. In fact, the hearing at which the district court entered the temporary injunction was called for the purpose of hearing the City's motion to dissolve the restraining order. And when the employees moved orally at that hearing for a temporary injunction, the City did not object that it lacked proper notice or was unprepared to proceed. K.S.A. 60-905 provides for "reasonable notice . . . and an opportunity to be heard." The City called a hearing at which the same issue—whether the Act's requirements still applied to it—would be considered, and the City had a full opportunity at that hearing to be heard.

As for the bond, the district court has the discretion to waive the bond requirement. The City argues that the district court did not expressly make a finding doing so, but as we have noted, we presume the district court made all findings necessary to support its judgment—including a waiver of a bond requirement—if the party opposing the judgment did not object and the record supports the presumption. See *O'Brien*, 294 Kan. at 361. Here the City did not object at the district-court level, and the fact that K.S.A. 75-4321(c) clearly says the City acted unlawfully in refusing to bargain with the employees' union as the 2014 budget year began supports the district court's

14

waiver of the bond. Thus, we presume that the district court waived the bond requirement and therefore find that it satisfied both the notice and bond requirements in this case.

Because we find the district court did not violate the statutory requirements for injunctions, the employees are highly likely to succeed on the merits of their claim, and substantial evidence supports the district court's factual findings, we hold that the district court did not abuse its discretion in granting the temporary injunction.

*The City Cannot Recover Attorney Fees.*

Even though it made no coherent argument for how a court could construe K.S.A. 75-4321(c) in its favor, the City has argued on appeal that it is entitled to attorney fees. The City acknowledges that it is only entitled to attorney fees if it can show that the district court should not have granted the injunction and that the fees were a natural result of the injunction. See K.S.A. 60-905(b); *Idbeis*, 285 Kan. at 489. Because the City hasn't shown that the injunction shouldn't have been granted, the City is not entitled to attorney fees in this case.

We affirm the district court's order granting a temporary injunction to the employees.