No. 115,001

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

C.M., for and on behalf of
A.M., a Minor Child,
*Appellee*,

v.

MICHAEL MCKEE,
*Appellant.*

SYLLABUS BY THE COURT

1.

Courts generally do not decide a lawsuit when its ruling would no longer have any practical significance, which means the lawsuit is moot. But there are exceptions to this general rule, including (1) when the issue is of public importance and capable of repetition and (2) when dismissal of the appeal could adversely affect vital rights of one of the parties. A court may decide a moot case if it fits one of the exceptions.

2.

Under the definition of "stalking" in the Kansas Protection from Stalking Act, a plaintiff must have reasonable fear for his or her safety and the defendant's actions must be ones that would cause a reasonable person to suffer from substantial emotional distress before a district court may find the defendant stalked the plaintiff. In deciding whether stalking has taken place when the plaintiff is a child, the court must view the circumstances from the viewpoint of a reasonable child of the plaintiff's age.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed June 23, 2017. Affirmed.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, and *Kristen B. Patty*, of Wichita, for appellant.

*Dana C. Stuart*, of Wichita, for appellee.

Before LEBEN, P.J., PIERRON and BRUNS, JJ.

LEBEN, J.: Michael McKee appeals the protection-from-stalking order entered against him and in favor of his neighbor, A.M., a young girl who was 11 years old at the time the order was entered. A protection-from-stalking order is available in Kansas when someone has engaged in a course of conduct that placed the other person in reasonable fear for that person's safety and that would cause a reasonable person to suffer substantial emotional distress.

McKee contends on appeal that a reasonable 11-year-old child wouldn't have feared for her safety or suffered substantial emotion distress due to his actions. But when we look at this from the vantage point of a reasonable 11-year-old child, sufficient evidence supports the district court's conclusion that this child was reasonably in fear and suffered substantial emotional distress—caused when McKee jumped out from behind bushes as the girl was walking home from school and when he took his hands off the steering wheel of his truck and swerved in the direction of the car the girl was riding in.

FACTUAL AND PROCEDURAL BACKGROUND

The parties to this case have been neighbors for about 10 years. Their relationship became strained when McKee began to complain to A.M.'s father (Father) and the City of Wichita about the condition of his neighbor's yard.

2

A.M.'s mother (Mother) and Father both filed protection-from-stalking suits against McKee, and Mother also filed suit on A.M.'s behalf. The district court ruled in McKee's favor on the suits brought by Mother and Father, so our discussion will center on the allegations related to A.M., who testified at the trial held in district court.

A.M. described three incidents. In the first, she said McKee jumped out of the bushes as she was walking home with a friend in the alley behind McKee's house. A.M. said she was scared and ran to her Mother. In the second, she said she was kicking an old plastic bottle with friends in her backyard when the bottle sailed over the fence into McKee's yard. She said he frightened her by yelling at her and her friends from his yard. In the third, she said that she and a friend were in a car being driven by Father when McKee drove toward them in his truck from the opposite direction. She said that McKee took his hands off the steering wheel and his truck swerved towards the car A.M. was in.

Father provided testimony about the third incident. He said that he was in the car with A.M. and her friend when he saw McKee in the courthouse parking lot. Father said McKee stared at him for 5 minutes. Father said that he then drove out of the parking lot and went to a friend's home. On the way home from the friend's house, Father said he saw McKee driving toward him while waving, laughing, and pointing at Father. Father said that McKee's actions that day scared A.M.

McKee testified that he had no recollection of an incident in which A.M. claimed he jumped out of some bushes as she passed by. He recalled yelling when the empty pop bottle came into his yard, and he said he went and apologized to Mother when he realized he had been yelling at children. As for the driving incident, McKee said he had purposefully waited to leave until Father drove away because he didn't want Father to think McKee was following him. McKee said that he went to a nearby convenience store and then headed home—seeing Father at a stop sign en route. McKee said he couldn't

remember whether he waved but said that he didn't take both hands off the steering wheel or come close to hitting Father's car.

The district court ruled in McKee's favor on the petitions brought by Mother and Father; those rulings were not appealed. The court found in favor of A.M. on her petition, and it specifically noted the incident while driving and the incident involving the plastic bottle:

> "She testified that there was the incident when they were in the vehicles and her version was he took his hands off the wheel, swerved, [and] she felt in fear of her own personal safety. She testified that she was playing in the backyard, playing football, used a pop bottle that goes over the fence, he yells at them and Mr. McKee himself acknowledges that he went to apologize. If he didn't have anything to apologize about, there's no reason he would have gone to apologize.
>
> "So as to [A.M.], I find that the evidence is sufficient . . . ."

The court entered an order of protection, essentially prohibiting McKee from harassing or contacting A.M. for a 1-year period.

McKee then appealed to our court.

ANALYSIS

Before we reach the merits of McKee's appeal, we must first deal with one preliminary matter. The protection order expired on November 19, 2016, so a ruling in this appeal would seem to be of no practical significance—in legal terms, the appeal is moot. And generally appellate courts don't decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012).

4

But there are exceptions to this general rule, and McKee urges that we apply them here. The two exceptions he argues are (1) when the issue is of public importance and capable of repetition and (2) when dismissal of the appeal could adversely affect vital rights of one of the parties. See *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120 (2007). A court may decide a moot case if it fits one of these exceptions.

We agree with McKee that the question of how testimony of a child in a protection-from-stalking case should be evaluated is one of public importance that is likely to come up again. That question has not yet been addressed in a published appellate opinion, so addressing it here would be of general value for future cases.

McKee's claim regarding an adverse impact on his vital rights is more tenuous. He argues that the existence of a judgment against him—a grown man—for "stalking" an 11-year-old girl could have "potentially adverse collateral consequences." It's no doubt true that many would view negatively a man found to have harassed the 11-year-old girl next door. But McKee has not shown any specific way in which this would affect his legal rights.

Even so, given the public importance of establishing a standard for consideration of stalking claims brought by children, we will address the issues he has raised in this appeal. We necessarily address the standard under which the evidence is to be evaluated, and we conclude that the application of that standard to the facts of this case is also required for that otherwise abstract standard to have real meaning that can be applied in future cases.

We turn then to the merits of McKee's appeal. He claims that there wasn't sufficient evidence of stalking as that term is defined by statute.

What's considered stalking under the Protection from Stalking Act, K.S.A. 60-31a01 *et seq.*, is set out in three interrelated definitions—covering the terms "stalking," "harassment," and "course of conduct." "Stalking" is the "intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2016 Supp. 60-31a02(a). "Harassment" is "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 2016 Supp. 60-31a02(b). And a "course of conduct" is "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 2016 Supp. 60-31a02(c). The statute also contains a provision excluding "constitutionally protected activity" from the definition of course of conduct. (We've omitted provisions defining the use of drones to surveil others, which can constitute stalking. See K.S.A. 2016 Supp. 60-31a02[d].)

Based on these statutory definitions, a valid stalking claim (not involving the use of an aerial drone) would require proof of:

- At least two separate acts;
- Directed at a specific person;
- Intentionally done;
- Showing a continuity of purpose that would cause a reasonable person to suffer substantial emotional distress;
- Placing the person in reasonable fear for his or her safety;
- Through conduct that seriously alarmed, annoyed, tormented, or terrorized the person; and
- That served no legitimate purpose and was not constitutionally protected.

As with other civil cases, these facts need only be proved by a preponderance of the evidence, meaning it is more likely than not that the facts are true. See K.S.A. 2016 Supp. 60-31a05(a).

Before we consider whether the evidence presented to the district court supported its finding that these elements were proven, we must determine what standard to apply in determining whether a reasonable person would have feared for his or her safety or suffered substantial emotional distress. For an 11-year-old plaintiff, we should consider things from the standpoint of a reasonable 11-year-old, not a reasonable adult. We would not refuse relief to a child simply because a reasonable adult would not be fearful in the same situation; doing so would be contrary to the statutory direction that we liberally construe the Protection from Stalking Act to protect victims. See K.S.A. 60-31a01(b). We note too that a child's age is considered in other contexts. See, *e.g.*, *J.D.B. v. North Carolina*, 564 U.S. 261, 270-72, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (holding that when a child's age is known or reasonably apparent to a police officer, it must be considered when determining how a reasonable person in the suspect's position would perceive his freedom to leave for *Miranda* purposes); ; *State v. Gibson*, 299 Kan. 207, 215, 322 P.3d 389 (2014) (applying a multi-factor test that considers a child's age, education, and mental state when applying *Miranda*); *Honeycutt v. City of Wichita*, 247 Kan. 250, 264, 796 P.2d 549 (1990) (determining a child's comparative negligence based on degree of care that would be exercised by children of the same age, intelligence, capacity, and experience) *Swix v. Daisy Mfg. Co.*, 373 F.3d 678, 686-87 (6th Cir. 2004) (applying reasonable-child standard in a products-liability case).

McKee argues on appeal that the two acts noted by the judge—involving yelling after a pop bottle came over McKee's fence and McKee's driving his truck toward Father's car—should not cause a reasonable 11-year-old to fear for her safety or suffer substantial emotional distress. First, he argues that "[b]eing yelled at over a privacy fence . . . should not cause a 'reasonable person to fear for her safety.'" Second, he argues that

7

"there is no evidence that McKee intended to direct his actions personally toward [A.M.]" when he allegedly swerved his truck toward Father's car.

We agree that it's hard to conclude that a reasonable person—even at 11 years of age—would fear for her safety and suffer emotional distress because a neighbor yelled at her when an object she was playing with flew into the neighbor's yard. We need not decide that question, however, because even without it, there are two separate acts meeting the elements of stalking that were proved through A.M.'s testimony.

The first, of course, was the one with the swerving truck. A.M. testified that McKee took his hands off the steering wheel with his truck headed toward Father's car, with her in it. One can certainly infer that McKee had seen Father and A.M. get in the car at the courthouse; Father testified that McKee stared at them for 5 minutes in the parking lot. So even if McKee's action was directed at both Father and A.M., one could certainly say it was directed at A.M. And it's not hard to imagine an 11-year-old girl being quite frightened by that conduct.

The second is when McKee jumped out from a bush while A.M. was walking by on her way home from school. While the district judge didn't specifically mention it when he announced his factual findings, no one asked the judge to make a specific finding about whether he believed A.M.'s testimony on this point. On appeal, we generally conclude that the district court has found whatever facts would support its judgment if those facts are supported by substantial evidence. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012); *Wing v. City of Edwardsville*, 51 Kan. App. 2d 58, 66, 341 P.3d 607 (2014), *rev. denied* 302 Kan. 1022 (2015). The district judge certainly generally found A.M. a credible, truthful witness, and her testimony about McKee jumping out of a bush also meets the elements for stalking. The act was intentional and directed at A.M., had no legitimate purpose, and would be alarming to a reasonable 11-year-old girl. In a filing in our court, McKee told us that he's

in his 60's. In the absence of an existing and friendly relationship between the two, we think it quite reasonable for an 11-year-old girl to be fearful, annoyed, and distressed when a 60-year-old man jumps out from the bushes while she's on her way home from school.

In sum, the evidence showed at least two separate acts that met all the other statutory requirements for stalking. The district court properly entered an order of protection.

We affirm the district court's judgment.