No. 96,606

BADR IDBEIS, M.D., *Plaintiff*, and GARY S. BENTON, M.D.; ROBERT H. FLEMING, M.D.; and JOHN D. RUMISEK, M.D., *Plaintiffs/Appellants*, v. WICHITA SURGICAL SPECIALISTS, P.A., *Appellee*.

(173 P.3d 642)

Opinion filed December 21, 2007.

*Todd E. Shadid*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, argued the cause, and *Christopher A. McElgunn* and *Gary M. Austerman*, of the same firm, were with him on the briefs for appellants.

*Gary L. Ayers*, of Foulston Siefkin LLP, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises an issue of first impression: When a party who receives a temporary injunction and posts an injunction bond does not ultimately prevail in the action, is the party liable under K.S.A. 60-905(b) for the attorney fees and expenses incurred by the opposing party, including fees incurred during a trial on the merits and during an appeal, even though the opposing party files a counterclaim and seeks a temporary and permanent injunction? Because damages payable by injunction bonds are generally limited to those actually and proximately resulting from the effect of the temporary injunction itself, as opposed to litigation expenses independent of the temporary injunction, we conclude that a party who files a counterclaim and seeks a declaratory judgment and injunction in addition to answering and opposing the entry of a permanent injunction in favor of the other party is entitled only to those fees incurred in seeking the disso-

lution of the temporary injunction and is not entitled to damages for fees that would necessarily have been incurred in pursuing the counterclaim and its attendant remedies.

The attorney fees and expenses at issue in this appeal arise from litigation that culminated in this court's decision in *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 112 P.3d 81 (2005) (*Idbeis I*). The focus of the litigation is the enforceability of restrictive covenants that prohibited employees of Wichita Surgical Specialists, P.A. (WSS), from competing against WSS. Gary S. Benton, M.D.; Robert H. Fleming, M.D.; and John D. Rumisek, M.D. (Surgeons) and other physicians filed the suit after giving WSS notice that they were voluntarily terminating their employment relationship. The Surgeons and some other WSS-employed physicians, including Dr. Idbeis, who is not a party to this appeal, intended to establish competing practices within the geographic territory and during the time period covered by the noncompetition agreement and, in doing so, would have breached the restrictive covenants. *Idbeis I*, 279 Kan. at 761.

Through this action the Surgeons sought a judgment declaring the restrictive covenants unenforceable. Additionally, on March 15, 2002—the same date as the suit was filed—the Surgeons sought and received an ex parte temporary restraining order that prohibited WSS from enforcing the restrictive covenants.

Less than a week later, WSS filed a motion to vacate the temporary restraining order and on the same date filed a counterclaim seeking a declaratory judgment that the covenants were enforceable. WSS also sought a temporary and permanent injunction requiring compliance with the restrictive covenants.

The trial court conducted a hearing on the motion to vacate and on June 13, 2002, issued a temporary injunction prohibiting WSS from enforcing the restrictive covenants. Pursuant to K.S.A. 60-905(b), the trial court required the Surgeons to post an injunction bond.

Approximately 1 year later, after conducting discovery, the parties tried the case to the court. The trial court ruled that the restrictive covenants in the Surgeons' employment contracts were enforceable. However, the trial court granted the Surgeons' alter-

native request that they be allowed the option of paying liquidated damages and, upon doing so, continue their competing practice.

The Surgeons appealed and WSS cross-appealed. In *Idbeis I*, 279 Kan. 755, we affirmed the trial court's decision that the restrictive covenants in the Surgeons' employment contracts were enforceable, but we reversed the trial court's ruling grafting a liquidated damages provision into the contracts. *Idbeis I*, 279 Kan. at 775.

After this court issued its mandate in *Idbeis I*, WSS filed a motion for attorney fees and costs under K.S.A. 60-905(b). In its motion, WSS sought to recover as damages from the Surgeons (1) fees incurred in filing a motion to vacate the temporary order and in preparing for and conducting the hearing on the motion; (2) fees incurred in conducting discovery after the trial court's June 13, 2002, ruling; (3) fees incurred in the trial on the merits of the Surgeons' declaratory judgment claims and WSS's counterclaim; and (4) fees incurred in the *Idbeis I* appeal. WSS claimed a total of $375,218.38. WSS argues it is entitled to the fees and expenses because it ultimately prevailed in the underlying action based upon this court's ruling.

The trial court granted the motion and determined the amount of attorney fees and expenses to be $361,851.38. Consequently, the trial court entered judgment against each surgeon (Drs. Benton, Rumisek, and Fleming) in the amount of $120,617.12.

The Surgeons timely appealed the trial court's decision to grant WSS's motion for attorney fees.

## ANALYSIS

As a general rule, attorney fees and expenses of litigation, other than court costs, incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties. *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1333, 136 P.3d 428 (2006); *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 392-93, 154 P.3d 1094 (2007). Without statutory authority or an agreement by the parties, a trial court's equitable powers do not extend to the awarding of attorney fees. 37 Kan. App. 2d at 392-93. Consistent

with the general rule that attorney fees are not awarded to the prevailing party, statutory provisions allowing fees are typically construed strictly. See *Hatfield v. Wal-Mart Stores, Inc.*, 14 Kan. App. 2d 193, 197, 786 P.2d 618 (1990) (citing *Atlantic Coast Line v. Riverside Mills*, 219 U.S. 186, 55 L. Ed. 167, 31 S. Ct. 164 [1911], for point that statute mandating attorney fees in certain proceedings upon defined claims is strictly limited to proceedings and claims described in statute).

Consequently, WSS can recover only those attorney fees allowed by K.S.A. 60-905(b). K.S.A. 60-905(b) states in part:

"Unless otherwise provided by statute or this section, no temporary injunction shall operate unless the party obtaining the same shall give an undertaking with one or more sufficient sureties in an amount fixed and approved by the judge of the court, securing to the party injured the damages such injured party may sustain including attorney fees if *it be finally determined that the injunction should not have been granted.*" (Emphasis added.)

Before damages can be recovered under K.S.A. 60-905(b), there are two requirements that must be met. First, "it [must] be finally determined that the injunction should not have been granted." K.S.A. 60-905(b); see also *Tobin Construction Co. v. Holtzman*, 207 Kan. 525, 530, 485 P.2d 1276 (1971) (to recover damages for the wrongful issuance of restraining order or temporary injunction, a party must establish that temporary restraint imposed was wrongful). Second, it must be established that the fees were incurred as the "actual, natural and proximate result of the granting of the [temporary] injunction order." *Tullock v. Mulvane*, 61 Kan. 650, 663, 60 Pac. 749 (1900). Because of this requirement, from as long ago as 1881 the damages have been limited to attorney fees incurred in obtaining the "dissolution of the injunction." *Underhill v. Spencer*, 25 Kan. 71, 73 (1881). Thus, "the damages recoverable are limited strictly to those incurred in procuring the setting aside of the wrongful restraining order." *Miner v. Kirksey*, 113 Kan. 715, 718, 216 Pac. 284 (1923).

Applying these general rules, the Surgeons argue: (1) WSS is not entitled to these damages because there is no showing that the temporary injunction should not have issued and (2) the fees were not the proximate result of the temporary injunction but arose from

WSS's pursuit of its counterclaim seeking temporary and permanent injunctive relief enforcing the restrictive covenants against the Surgeons. WSS counters that the fact it prevailed on appeal shows that the temporary injunction should not have issued. Responding to the Surgeons' arguments as to why the fees were not allowed by K.S.A. 60-905(b), WSS argues the trial court could fashion an equitable remedy; that the statute should be liberally construed; and that the expenses are so intertwined as to be inseparable, justifying the award of all fees, including those incurred on appeal.

These arguments bring into question the trial court's authority to order the payment of the attorney fees. Where the trial court's authority to award attorney fees is questioned, an appellate court is presented with a question of law over which it exercises unlimited review. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). Contrary to WSS's suggestion, an abuse of discretion standard is not applicable to this appeal; that standard applies when appellate courts review the amount of the awarded fees (*Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 [2006]) or the decision to award fees where the trial court's authority to award fees is not questioned (*Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 887-88, 135 P.3d 1230 [2006]). We do not reach those issues in this case and, instead, apply unlimited review to the question of whether K.S.A. 60-905(b) granted the trial court authority to award attorney fees under the circumstances of this case, *e.g.,* whether (1) the temporary injunction against WSS should not have been granted and (2) the attorney fees were incurred as the actual, natural, and proximate result of the granting of the temporary injunction

### Was the TRO Wrongfully Granted?

First, the Surgeons contend that WSS had no standing to request attorney fees because WSS failed to show that the June 13, 2002, temporary injunction was wrongfully granted.

In ruling on WSS's motion for attorney fees, the trial court determined that the temporary injunction "should not have been issued." The trial court noted there were necessary findings imposed by Kansas law regarding temporary injunctions. Although the trial

court did not specify these necessary findings, we recently clarified that there are five factors to be considered before granting a temporary or preliminary injunction. First, the movant must establish the "substantial likelihood" of eventually prevailing on the merits. This requirement exists because " '[t]he purpose of a temporary or preliminary injunction is not to determine any controverted right, but to prevent injury to a claimed right *pending a final determination of the controversy on its merits.*' " *Steffes v. City of Lawrence*, 284 Kan. 380, 394, 160 P.3d 843 (2007). If a substantial likelihood of success on the merits is established, the trial court must find: a substantial likelihood of eventually prevailing on the merits; a reasonable probability of suffering irreparable future injury; the lack of obtaining an adequate remedy at law; the threat of suffering injury outweighs whatever damage the proposed injunction may cause the opposing party; and the impact of issuing the injunction will not be adverse to the public interest. 284 Kan. at 395.

In this case, the trial court determined it failed to make at least one of these necessary findings when the temporary injunction issued in 2002. The court noted this conclusion was "based upon the Court's review of the record, the basis for originally granting the temporary injunction . . ., along with the Supreme Court's decision in this matter."

The Surgeons argue that, regardless of the final outcome of the case, the trial court's 2002 findings and conclusions were supported at the temporary injunction stage of the proceeding. To support their arguments, the Surgeons cite Illinois case law for the proposition that a "temporary injunction may be wrongfully issued although the plaintiff prevails in his suit on the merits, and the temporary injunction may rightfully issue although the plaintiff does not sustain his suit on the merits." *Label Printers v. Pflug*, 246 Ill. App. 3d 435, 438, 616 N.E.2d 706 (1993); accord *Schien v. City of Virden*, 5 Ill. 2d 494, 503, 126 N.E.2d 201 (1955).

The Illinois case law is contrary to Kansas precedent, however. In *Harlow v. Mason*, 98 Kan. 353, Syl. ¶ 3, 157 Pac. 1175 (1916), it was said: "It is conclusively determined that a temporary injunction ought not to have been granted when it is finally decided on

the merits that the plaintiff is not entitled to an injunction of any sort, temporary or permanent." Accord *Messmer v. Kansas Wheat Growers' Ass'n*, 129 Kan. 220, 222, 282 Pac. 728 (1929).

More recent case law, although not directly on point, raises questions about whether this rule remains viable. Subsequent to the decisions in *Harlow, Messmer*, and other cases citing this rule, this court has imposed the five requirements for the granting of a temporary injunction. A finding of these factors does not mean that the movant will succeed in a trial on the merits, however. Indeed, a reasonable probability of success is a much lower hurdle than meeting the applicable burden of proof at trial. As the Tenth Circuit Court of Appeals has stated: " 'To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt . . . .' " *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781-82 (10th Cir. 1964). A lower standard applies at the preliminary injunction stage because

" '[t]he purpose of a temporary or preliminary injunction is not to determine any controverted right, but to prevent injury to a claimed right *pending a final determination of the controversy on its merits*. The grant of a temporary injunction would not be proper if it would appear to accomplish the whole object of the suit without bringing the cause or claim to trial. A temporary injunction merely preserves the status quo *until a final determination of a controversy can be made*.' (Emphasis added.) [Citation omitted.]" *Steffes*, 284 Kan. at 394.

Also, beyond looking at the merits, the other factors raise separate and distinct issues not involved in a final judgment.

In light of these requirements, we conclude the holding of the Illinois court—that a "temporary injunction may be wrongfully issued although the plaintiff prevails in his suit on the merits, and the temporary injunction may rightfully issue although the plaintiff does not sustain his suit on the merits," *Label Printers v. Pflug*, 246 Ill. App. 3d at 438—better reflects the current analysis of the question of whether a temporary injunction should have been granted. We, therefore, hold that under K.S.A. 60-905(b) the analysis of whether a temporary injunction should not have been issued must be based upon whether the movant met the five conditions for a temporary injunction by establishing: a substantial likelihood

of eventually prevailing on the merits; a reasonable probability of suffering irreparable future injury; the lack of obtaining an adequate remedy at law; the threat of suffering injury outweighs whatever damage the proposed injunction may cause the opposing party; and the impact of issuing the injunction will not be adverse to the public interest. The determination of whether a temporary injunction should not have been issued is not based upon whether the movant ultimately prevailed in the action, because an analysis of the factors may result in the issuance of a temporary injunction even though the movant subsequently loses on the merits. In other words, a temporary injunction may be wrongfully issued although the plaintiff prevails in the suit on the merits, and the temporary injunction may be rightfully issued although the plaintiff does not prevail.

In this case, the trial court engaged in an analysis of whether the temporary injunction should have been granted by examining the various factors required to be met before a temporary injunction is issued. It determined that it had incorrectly applied Kansas law in evaluating the likelihood of the Surgeons' success on the merits and had failed to find at least one other prerequisite before issuing the temporary injunction. We discussed the error of the trial court's analysis in *Idbeis I,* and that discussion need not be repeated here. Additionally, the record reveals that the trial court did not find that the Surgeons had established each of the other factors as required for the issuance of a temporary injunction. Therefore, the trial court correctly determined that the June 13, 2002, temporary injunction should not have been granted.

### *Was the Award of Fees Authorized by K.S.A. 60-905(b)?*

Next, the Surgeons argue the trial court erred in awarding attorney fees and expenses to WSS under K.S.A. 60-905(b), resulting from the wrongful issuance of the June 13, 2002, temporary injunction. The Surgeons contend that the attorney fees requested by WSS too broadly encompassed fees WSS would have incurred in litigating its counterclaim and request to enforce the restrictive covenants.

It has long been the settled rule in Kansas that damages recoverable from injunction bonds under K.S.A. 60-905(b) and its predecessor statutes are generally limited to those actually and proximately resulting from the effect of the temporary injunction itself, as opposed to litigation expenses independent of the temporary injunction. See *Tobin,* 207 Kan. at 530 (party can only recover damages that are a "direct, natural and proximate result of the injunction"); *Alder v. City of Florence,* 194 Kan. 104, 110, 397 P.2d 375 (1964) (where restraining order or temporary injunction was wrongfully issued, all expenses which are incurred by defendants and which are recoverable by defendants on bond may be recovered whether determination that order was wrongfully issued is in final trial of case or on separate hearing pursuant to application to set aside or vacate order); *Miner,* 113 Kan. 715, Syl. ¶ 2 (fact part of relief sought was permanent injunction did not preclude recovery of reasonable and necessary fees and expenses incurred in dissolving temporary injunction wrongfully granted). This is true in other jurisdictions as well. See, *e.g., Hayes v. State,* 254 Ark. 680, 684-85, 496 S.W.2d 372 (1973) (to be recoverable, damages "must be traceable to the act complained of as its direct, proximate and natural consequence, and must not be remote and speculative, involving inquiries that are collateral to . . . the wrongful issuance of the temporary injunction"); *Phoenix Aviation, Inc. v. MNK Enterprises, Inc.,* 128 Idaho 819, 824, 919 P.2d 348 (1996) ("liability is limited to compensation for injury directly attributable to the preliminary injunction"); *Carr v. Citizens Bank & Trust Co.,* 228 Va. 644, 651, 325 S.E.2d 86 (1985) ("In an action on an injunction bond, a plaintiff may recover all damages that are the natural and proximate result of the issuance of the injunction. . . . Properly allowable damages include only those damages that directly result from the suing out of the injunction."). Two cases relied upon by the Surgeons are in accord: *Shultz v. Pascoe,* 94 N.M. 634, 635, 614 P.2d 1083 (1980) ("Where a person is wrongfully enjoined, he may recover only that portion of his counsel fees applicable to the restraint or injunction, but not for the other legal services involved in the litigation."), and *Devine v. Cluff,* 110 Idaho 1, 4, 713 P.2d 437 (1985) (attorney fees are limited to those applicable to re-

straining order; fees related to defense of plaintiff's claims and to counterclaim must be segregated).

As a matter of logic, the temporary injunction was not the sole proximate cause of WSS's attorney fees when WSS was itself seeking an injunction enforcing the restrictive covenants. As a practical matter, the only manner in which WSS could effectively enforce its contract and protect its contractual rights was to seek an order prohibiting the Surgeons from practicing medicine in violation of the restrictive covenants. Therefore, at a minimum, it cannot be said that the temporary injunction was the sole cause of the incurred fees.

WSS counters this conclusion with three arguments. First, WSS argues that nothing in K.S.A. 60-905(b) limits the equitable jurisdiction of the trial court to fashion a remedy it deems to be fair and just under the circumstances. Contrary to this argument, the power to award attorney fees in this case is statutory, and equitable powers cannot extend that authority. *Brennan*, 37 Kan. App. 2d at 392-93.

Second, WSS suggests K.S.A. 60-905(b) should be liberally construed to accomplish its remedial purposes. This suggestion is in direct conflict with the rule of strict compliance applying to attorney fee provisions and, more specifically, with Kansas cases dealing with fees recoverable under injunction bonds. *E.g., Miner*, 113 Kan. at 718 ("[T]he damages recoverable are limited *strictly* to those incurred in procuring the setting aside of the wrongful restraining order." (Emphasis added.)

Finally, citing *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, 546, 947 P.2d 1039 (1997), WSS argues it made an appropriate segregation of its attorney fees and expenses where possible but in large part the fees were so intertwined with other claims " 'to the point of being inseparable.' " The trial court accepted this argument, explaining:

"Statements of counsel and affidavits indicate defense counsel has already segregated out fees and cost[s] related to other matters. The remaining work (and requested fees) is related to the core issue of the temporary injunction and whether it should have been granted. Even if WSS had not counterclaimed for its own injunction the same work would have been performed to establish the

injunction should not have been granted. In the Court's opinion the work was so intertwined that it was to the point of being inseparable."

In so ruling, the trial court relied upon *DeSpiegelaere*. The issue in that case related to attorney fees under the Kansas Consumer Protection Act (KCPA). Additionally, the plaintiff asserted non-KCPA claims, none of which could serve as a basis for the recovery of attorney fees. Therefore, fees were only allowed under the KCPA. The defendant argued it should not be liable for fees incurred in relation to the non-KCPA claims and suggested the plaintiff was required to segregate the fees related to the KCPA claim. The Court of Appeals acknowledged the general rule that recoverable fees must be segregated from other fees. However, the Court of Appeals also recognized an exception to the segregation rule when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their " ' "prosecution or defense entails proof or denial of essentially the same facts." [Citation omitted.]' " 24 Kan. App. 2d at 546. In other words, when the causes of action involved in the suit depend upon the same set of facts or circumstances and are " ' "intertwined to the point of being inseparable," ' " the party suing for attorney fees may recover the entire amount. 24 Kan. App. 2d at 546.

The Surgeons suggest that this rule should not apply to damages under K.S.A. 60-905(b); rather, under that provision, the damages must be strictly limited to the dissolution of the temporary injunction. The parties have not cited and we have not found any Kansas case dealing with injunction bonds which directly addresses the question of whether fees incurred in the trial on the merits and on appeal can be recovered when intertwined with the issues related to the temporary injunction to the point of being inseparable. Some guidance can, however, be mined from our prior case law where the court concluded the fees could be segregated.

In *Messmer*, a temporary injunction issued; it was not set aside until the court denied the request for a permanent injunction after the trial. In allowing the recovery of attorney fees, the court first rejected the argument that the fees could not be recovered because a motion to vacate the temporary order, although filed, had not

been pursued. The court cited several Kansas cases where the temporary order was not vacated until the trial, yet attorney fees were allowed. The court then added: "Practically the only difference in the right to recover is that there may be some difficulty in determining what expenses were incurred where the temporary injunction or restraining order is dissolved or set aside on the trial while the expenses incurred on special hearing on motion present no such question." 129 Kan. at 222-23. Although the difficulty was recognized, the court required segregation of the fees and concluded the attorney fees could be allowed because the fees had been segregated, stating: "Direct and competent evidence was offered to show the various steps taken before and after the application to set aside the restraining order was filed, the expenses incurred in preparing for a hearing of the application and the reasonable value of such services, which amounted to a substantial sum—expenses which apparently had no connection with the final trial of the case on its merits." 129 Kan. at 223.

In reaching this conclusion, the *Messmer* court cited *Tullock v. Mulvane*, 61 Kan. 650, 60 Pac. 749 (1900), *reversed on other grounds by Tullock v. Mulvane*, 184 U.S. 497, 46 L. Ed. 657, 22 S. Ct. 372 (1902), a case in which, before the final trial, the plaintiff dismissed the portion of its claim that related to the temporary injunction. The *Tullock* court stated:

"It is next contended that there was a failure to separate the attorneys' fees which Mulvane claimed he had paid in the injunction branch of the case from those paid for defending the bill for damages for nonperformance of contract, and, also, that a portion of that for which he made claim was paid for services not rendered to him but rendered to other defendants in the injunction proceeding. We have examined the evidence as to this. The plaintiff in error is mistaken." 61 Kan. at 658-59.

Because the portion of the claim that related to the temporary injunction had been dismissed before trial, the court, although its holding is not clear, seems to be stating that the evidence established that the fees had been segregated.

In another case, *Miner*, 113 Kan. 715, there was no final trial of the action. Rather, the plaintiff dismissed his case after the temporary order was sustained. The plaintiff argued that the fees were

incurred in general defense of the action. The court acknowledged that the validity of a city ordinance was an issue involved in the merits of the case and was central to the temporary order. The court awarded the fees even though there was an overlap of issues, but it concluded: "Of course, the damages recoverable are limited *strictly* to those incurred in procuring the setting aside of the wrongful restraining order." (Emphasis added.) 113 Kan. at 718. Thus, while issues were intertwined, the court required that the fees be incurred in the dissolution of the temporary injunction. See also *Underhill v. Spencer*, 25 Kan. 71, 73 (1881) (attorney fees are limited to "services in obtaining a dissolution of the injunction").

These cases are consistent with a decision of the Utah Court of Appeals wherein the analysis was placed within a proximate cause rubric. The court explained:

"Although Rule 65A justifies awarding attorney fees to wrongfully enjoined parties, those parties are only entitled to 'fees . . . incurred in defending against wrongfully obtained injunctive relief' and not to fees incurred in litigating the underlying lawsuit associated with an injunction. [Citations omitted]. Thus, in the present case, [the defendant] is entitled only to those attorney fees which would not have been incurred *but for* the application for, and issuance of, the preliminary injunction. Fees which would have been incurred anyway, in the course of proving [the defendant's] entitlement to [summary] judgment and refuting [the plaintiff's response], are not recoverable under Rule 65A." *Tholen v. Sandy City*, 849 P.2d 592, 597 (Utah App.), *cert. denied* 860 P.2d 943 (Utah 1993).

See also Annot., 164 A.L.R. 1088 ("where the temporary injunction is ancillary only, it seems clear that there can be no recovery" and where injunction is sole remedy sought many courts still deny recovery because "whether there had been a temporary injunction or not, there would have been the same defense, the same pleadings, the same evidence, the same arguments, and consequently the same counsel fees, and that their expenditure would be caused by the suit and not by the issuance of the preliminary injunction").

As we have noted, since at least 1900, this court has stated that only fees that are the proximate cause of the temporary injunction are recoverable. *E.g., Tobin Construction Co. v. Holtzman*, 207 Kan. 525, 530, 485 P.2d 1276 (1971) (party can only recover damages that are a "direct, natural and proximate result of the injunc-

tion"); *Tullock*, 61 Kan. at 663 ("such damages as were the actual, natural and proximate result of the granting of the injunction order"). "Proximate cause" is defined as that cause which " ' "in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." ' " *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006). In other words, under K.S.A. 60-905(b), a party injured by a temporary injunction is entitled to only those attorney fees and expenses it would not have incurred but for the temporary injunction and cannot recover for fees that would have been incurred in the litigation even if the temporary injunction had not issued.

WSS's approach would convert the remedy to a loser pays provision in almost every case. Such an approach is contrary to Kansas' general view of attorney fee recovery. Moreover, it is contrary to the purpose of the injunction bond provision which contemplates that when a party obtains the extraordinary remedy of a temporary injunction and thereby temporarily deprives another of a right, the party should be responsible for any damages that arise if the restraint is wrongful. Hence, the fees are strictly limited to those incurred in the removal of that temporary restraint—the dissolution of the temporary injunction—and are not intended to cover fees incurred in determinating all of the claims and counterclaims asserted by the parties.

We hold that a party who files a counterclaim and seeks a declaratory judgment and injunction in addition to answering and opposing the entry of a permanent injunction in favor of the other party is entitled only to those fees incurred in seeking the dissolution of the temporary injunction and is not entitled to damages for fees that would have been necessarily incurred in pursuing the counterclaim and its attendant remedies, even if the issues relevant to the counterclaim are intertwined with the issues relevant to the temporary injunction.

We, therefore, remand the case for the district court to determine the fees directly and exclusively incurred in the dissolution of the temporary injunction.

Reversed and remanded with directions.

DAVIS, J., not participating.

GREENE, J., assigned.