No. 118,666

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS EX REL. DEREK SCHMIDT, ATTORNEY GENERAL,
*Appellant*,

v.

RONALD NYE, JOYCE NYE, TERRI HURLEY, and GARY MCAVOY, Individually and d/b/a
VINTAGE MEMORABILIA, and EMPRAXIS, LLC d/b/a VINTAGE MEMORABILIA,
*Appellees*.

SYLLABUS BY THE COURT

1.

At common law, a state is immune from suit unless it consents or waives its immunity. Questions concerning sovereign immunity are jurisdictional and can be raised at any time.

2.

Litigation conduct may constitute a waiver of the doctrine of sovereign immunity.

3.

The defense of sovereign immunity is not available to the State to shield it from liability for damages, including attorney fees, incurred by Defendants in seeking dissolution of the temporary injunction affirmatively sought and granted in its favor pursuant to K.S.A. 60-905(b) but later vacated based on a finding that it was wrongfully issued.

4.

The trial court's authority to award attorney fees is a question of law over which an appellate court exercises unlimited review.

1

5.

A temporary injunction imposed pursuant to K.S.A. 60-905(b) is valid, regardless of whether the trial court waives the bond requirement.

6.

Damages and attorney fees incurred in defending against a wrongfully issued temporary injunction order are recoverable under K.S.A. 60-905(b), even in the absence of an injunction bond.

7.

We review a trial court's authority to award fees for an abuse of discretion. A party challenging the award must show that no reasonable person would agree with the district court's decision or that the decision was not supported by substantial competent evidence.

8.

An award of attorney fees pursuant to K.S.A. 60-905(b) is limited to those actually and proximately resulting from the effect of the temporary injunction itself, as opposed to litigation expenses independent of the temporary injunction.

9.

The eight factors set forth in Kansas Rule of Professional Conduct 1.5(a) (2019 Kan. S. Ct. R. 300) for evaluating the reasonableness of a fee award are set forth and discussed.

10.

An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees.

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed March 29, 2019. Affirmed.

*Bryan C. Clark*, assistant solicitor general, *Dwight R. Carswell*, assistant solicitor general, *M.J. Willoughby*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellant.

*Tai J. Vokins* and *Krystal Vokins*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, LLC, of Lawrence, and *O. Yale Lewis Jr.*, pro hac vice, of Hendricks & Lewis, PLLC, of Seattle, Washington, for appellees.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

STANDRIDGE, J.:  The State appeals from the district court's order requiring it to pay attorney fees incurred by Ronald Nye, Joyce Nye, Terri Hurley, Gary McAvoy, and Vintage Memorabilia (hereinafter Defendants) in resisting and obtaining the dissolution of a preliminary injunction that was wrongfully issued. Finding no error, we affirm.

FACTS

On September 27, 2012, the State filed an ex parte verified petition asking the district court, among other things, to temporarily restrain and then preliminary and permanently enjoin Defendants from the sale, publication, replication, and distribution of any and all Kansas Bureau of Investigation file materials relating to the 1959 murder of members of the Clutter family in Holcomb, Kansas. That same day, the district court entered the ex parte temporary restraining order as requested. An amended ex parte temporary restraining order was filed on October 9, 2012.

On December 17, 2012, the district court held an evidentiary hearing on the State's request to convert the ex parte temporary restraining order into a preliminary injunction. At the end of the hearing, the court granted the parties' joint request to submit legal

3

arguments in support of their respective positions. On April 23, 2013, the district court granted the State's request and entered a preliminary injunction but left open the possibility for Defendants to request the court vacate it at a later date. Citing K.S.A. 60-905(b) as authority, the district court noted the State would not be required to post a bond in conjunction with the preliminary injunction.

On August 22, 2013, Defendants filed a motion to vacate the preliminary injunction. After significant delay due to discovery disputes, the State filed a motion for summary judgment on January 29, 2014. Defendants supplemented their motion to vacate on March 14, 2014, March 21, 2014, and June 6, 2014. The district court heard oral argument from the parties with regard to all pending motions on June 26, 2014, and took the matters under advisement. On November 7, 2014, Defendants filed an urgent request for a ruling on their motion to vacate. On November 26, 2014, the district court granted Defendants' motion to vacate the preliminary injunction, concluding that it should not have been granted in the first place.

On May 27, 2015, Defendants filed a motion to compel discovery that the State previously had failed to produce. Following a hearing, the district court granted that motion and ordered the State to produce the requested documents no later than July 7, 2015. Rather than produce the documents as ordered, the State filed a motion to voluntarily dismiss the case. Defendants indicated they did not object to voluntary dismissal but noted that allowing the State to do so before Defendants had an opportunity to present the court with various motions related to the litigation (including but not limited to their forthcoming motion for costs and attorney fees pursuant to K.S.A. 60-905[b]) would be highly prejudicial. Defendants subsequently filed a motion for costs and attorney fees. After further briefing and a hearing, the district court granted Defendants' motion for fees, awarding them $152,585 in attorney fees, but denied awarding costs. The district court held that the amount of fees it awarded all stemmed

4

from the wrongfully issued preliminary injunction that was requested by the State. The district court also granted the State's motion to dismiss.

ANALYSIS

On appeal, the State argues the district court erred in awarding Defendants attorney fees. Specifically, the State claims (1) it is protected from an award of attorney fees under K.S.A. 60-905(b) based on the doctrine of sovereign immunity, (2) the district court failed to consider the "injunction-bond" rule in making its decision to award fees, and (3) the district court abused its discretion in awarding fees. We address each of the State's claims in turn.

1. *Sovereign immunity*

The State argues it is entitled to sovereign immunity with respect to the district court's award of damages and attorney fees incurred by Defendants as the result of a wrongfully issued preliminary injunction. For the reasons stated below, we are not persuaded by the State's argument.

At common law, a state—as the sovereign—is immune from suit unless it consents or waives its immunity. *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, 213-14, 833 P.2d 996 (1992). Questions concerning sovereign immunity are jurisdictional and can be raised at any time. *Purvis v. Williams*, 276 Kan. 182, 197, 73 P.3d 740 (2003). Because sovereign immunity is jurisdictional, courts are compelled to address it. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 962, 26 P.3d 1246 (2001).

In support of its decision to award damages and attorney fees to Defendants that were incurred as the result of a wrongfully issued preliminary injunction, the district court determined the State waived any sovereign immunity to which it may have been

5

entitled. On appeal, the State challenges that determination. Specifically, the State asserts that only the Legislature can provide the consent necessary to waive sovereign immunity and that it must do so in express terms through legislative enactment. The State argues that K.S.A. 60-905(b), the legislative enactment under which the district court awarded damages and fees here, does not expressly consent to suit or waive sovereign immunity with respect to damages incurred by a defendant as the result of a wrongfully issued preliminary injunction requested by the State as a plaintiff.

We begin our analysis of the State's argument with K.S.A. 60-905(b), which provides as follows:

> "Unless otherwise provided by statute or this section, no temporary injunction shall operate unless the party obtaining the same shall give an undertaking with one or more sufficient sureties in an amount fixed and approved by the judge of the court, securing to the party injured the damages such injured party may sustain including attorney fees if it be finally determined that the injunction should not have been granted. Neither the state nor any of its agencies shall be required to give an undertaking with one or more sufficient sureties in order to be granted a temporary injunction. For any other party, at the discretion of the judge, the undertaking required by this subsection may be waived."

In this statute, the Legislature expressly contemplates the State (1) as a party plaintiff seeking a temporary injunction and (2) as a party liable for damages and attorney fees when the temporary injunction is granted but later is determined to have been wrongfully issued. Based on the language of the statute, we find it is the injury sustained as a result of the wrongfully issued temporary injunction that gives rise to the State's liability for damages and attorney fees, not the posting of a bond. The Legislature's decision to exempt the State from posting a bond is immaterial to the issue of sovereign immunity. The purpose of a bond is to secure to the party injured by a temporary injunction those damages the injured party may sustain, including attorney fees. *Idbeis v.*

6

*Wichita Surgical Specialists*, 285 Kan. 485, Syl. ¶ 3, 173 P.3d 642 (2007). By waiving the bond requirement, the Legislature is simply allowing the State and its agencies to act as their own sureties.

While a clear expression by the Legislature is the hallmark of an effective waiver of sovereign immunity, the United States Supreme Court also has recognized that waiver can be premised on litigation conduct. See *Lapides v. Board of Regents of Univ. System of GA*, 535 U.S. 613, 624, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). In *Lapides*, the Court determined that when a state is involuntarily brought into litigation in state court but then chooses to voluntarily remove the case to federal court, it thereby consents to the federal court's jurisdiction and waives immunity from suit by its litigation conduct. 535 U.S. at 619.

No Kansas court has ever held that the State may waive its immunity from suit in state court through its litigation conduct. But sovereign immunity finds its source in the common law, and the common law adapts to changing circumstances to advance notions of fair play and equity. And, as noted above, recognizing that the State can waive sovereign immunity through its litigation conduct is not a novel notion. See *Lapides*, 535 U.S. at 624. Holding that a state's litigation conduct may constitute a waiver of the doctrine of sovereign immunity would be a reasonable and fair adaptation of the common law. Sovereign immunity is a shield, not a sword to be used by the State when it invokes the court's equitable jurisdiction to obtain what ultimately was a wrongful injunction that caused damages to be incurred. Such a holding provides the optimal balance between the interests of government entities and the interests of the wrongfully enjoined litigants. To that end, we note that a governmental entity seeking injunctive relief has the option not to seek a temporary injunction but instead to wait and obtain a permanent injunction after a full presentation of evidence and a determination of entitlement to the relief.

For all of the reasons set forth above, we hold the defense of sovereign immunity is not available to the State to shield it from liability for damages, including attorney fees, incurred by Defendants in seeking dissolution of the temporary injunction affirmatively sought and granted in its favor but later vacated based on a finding that it was wrongfully issued. The fact that the State was statutorily exempted from posting a bond to secure the availability of monetary funds in the event an award of damages and attorney fees was granted is immaterial to our holding.

2. *Injunction-bond rule*

"Where the trial court's authority to award attorney fees is questioned, an appellate court is presented with a question of law over which it exercises unlimited review." *Idbeis*, 285 Kan. at 490.

The State claims the injunction-bond rule allegedly reflected in K.S.A. 60-905(b) only allows an award of damages and attorney fees when the court orders the plaintiff to post a bond to secure money for potential damage and attorney fees. Because the court did not order it to post a bond before issuing the temporary injunction here, the State argues the court is necessarily precluded from requiring it to reimburse Defendants for damages and attorney fees it incurred in seeking to dissolve the temporary injunction. We disagree.

As we did in the preceding section, we again begin our analysis with K.S.A. 60-905(b), which the Legislature amended in 1988 by adding the following italicized language:

> "Unless otherwise provided by statute *or this section*, no temporary injunction shall operate unless the party obtaining the same shall give an undertaking with one or more sufficient sureties in an amount fixed by the judge and approved by the clerk of the court, securing to the party injured the damages *such injured party* may sustain including

8

attorney fees if it be finally determined that the injunction should not have been granted. *Neither the state nor any of its agencies shall be required to give an undertaking with one or more sufficient sureties in order to be granted a temporary injunction. For any other party, at the discretion of the judge, the undertaking required by this subsection may be waived.*" L. 1988, ch. 214, § 1.

Prior to its amendment, the statute required anyone requesting a temporary injunction to post a bond in order to provide security to the party injured for damages that the injured party may sustain (including attorney fees) if it were later determined that the injunction should not have been granted. See L. 1988, ch. 214, § 1; see also G.S. 1949, 60-1110 (version of statute in effect prior to 1963 incorporation of injunction provisions into code of civil procedure). This requirement was a condition precedent to the operation of the temporary injunction. Without a bond, the temporary injunction was of no force and effect. *Ostler v. Nickel*, 196 Kan. 477, 479, 413 P.2d 303 (1966). After its amendment, the language of the statute exempts the State from any requirement to post a bond and provides the court discretion to waive the bond requirement for any other party. Based on the plain language of the amended statute as it exists today, a bond is no longer a condition precedent to obtaining a temporary injunction. A temporary injunction can now be in full force and effect even if the court waives the bond requirement.

Notably, the State does not challenge the fact that a bond is no longer a condition precedent to obtaining a temporary injunction or the fact that a temporary injunction can now be in full force and effect even if the court waives the bond requirement. Instead, the State relies on what it refers to as the injunction-bond rule, which historically limited the recovery of damages to the amount of money posted for the injunction bond. By exempting the State from any requirement to post a bond, the State argues the Legislature intended to disallow any and all damages for a litigant who was injured as the result of a wrongful injunction put into place at the request of the State.

9

The injunction-bond rule is a judicially created equitable doctrine that, in Kansas, dates back over a century. See, e.g., *State ex rel. Lewis, Co. Atty. v. Eggleston*, 34 Kan. 714, 722-23, 10 P. 3 (1886). Under this rule, an injunction generally was not allowed to operate until the party obtaining the injunction provided a bond executed by one or more sufficient securities to secure any potential damages sustained by the defendant as a result of the temporary injunction. 34 Kan. at 722-23. An exception to that rule occurred when there was a showing that the plaintiff acted with malice in obtaining the temporary injunction. Upon a showing of malice, an action for the wrongful procurement of a temporary injunction was permitted to proceed, even in the absence of a bond. *Alder v. City of Florence*, 194 Kan. 104, 110, 397 P.2d 375 (1964) ("no action for the wrongful procurement of a restraining order and/or temporary injunction [other than one upon a bond] is maintainable without a showing of malice"); see *Jacobs v. Greening*, 109 Kan. 674, 676, 202 P. 72 (1921) ("We regard an action [other than one upon a bond] for its wrongful procurement as not maintainable unless brought as one for malicious prosecution.").

Notably, the decisions creating and applying the injunction-bond rule did so based on the pre-1988 version of K.S.A. 60-905(b). The 1988 amendment undercuts the injunction-bond rule by allowing the State—and potentially any other party—to be exempted from the bond requirement. But the amendment did not otherwise alter the overall purpose of the statute: to compensate parties that are harmed by wrongfully granted injunctions. See *Idbeis*, 285 Kan. at 499 (decided after 1988 amendment and yet reaffirming "the purpose of the injunction bond provision which contemplates that when a party obtains the extraordinary remedy of a temporary injunction and thereby temporarily deprives another of a right, the party should be responsible for any damages that arise if the restraint is wrongful").

Notwithstanding the 1988 amendment to the statute, the State argues that the injunction-bond rule remains good law and prohibits the recovery of damages for a

wrongful injunction in the absence of an injunction bond. In support of its argument, the State relies on three Kansas Supreme Court cases and one Kansas Court of Appeals case. Two of the Supreme Court cases, *Alder*, 194 Kan. 104, and *Jacobs*, 109 Kan. 674, and the Court of Appeals case, *DeWerff v. Schartz*, 12 Kan. App. 2d 553, 751 P.2d 1047 (1988), were all decided before the 1988 amendment to K.S.A. 60-905(b) became effective. For this reason, the holdings in these cases fail to take into consideration the impact of the new language on an injured party's ability to recover damages from the State in the event of a wrongful injunction.

The third case relied on by the State is *Idbeis*. This is the only case cited by the State that was decided after the 1988 amendment. We find, however, that this case does not support the State's assertion that, under K.S.A. 60-905(b), the amount of damages and attorney fees that can be recovered by an injured party is limited to the amount of money posted in an injunction bond. In *Idbeis*, our Supreme Court held as a matter of first impression that although K.S.A. 60-905(b) justifies awarding attorney fees to wrongfully enjoined parties, those parties are only entitled to fees incurred in defending against wrongfully obtained temporary injunctive relief and not to fees incurred in litigating the underlying permanent injunction lawsuit. 285 Kan. at 499. In the analysis leading up to this holding, the court relied on the language of K.S.A. 60-905(b) to draw attention to the two requirements that must be met before damages can be recovered under that statute. First, the court must have finally determined that the temporary injunction should not have been granted. Second, the injured party must establish that the fees were incurred as the actual, natural, and proximate result of the granting of the temporary injunction order. 285 Kan. at 489. Significantly, the *Idbeis* court did not construe K.S.A. 60-905(b) to require a temporary bond injunction be posted before damages can be recovered under that statute.

In its memorandum decision and order holding that damages against the State are recoverable under K.S.A. 60-905(b) in the absence of an injunction bond from the State,

11

the district court in this case relied on *Brady Fluid Svc., Inc. v. Jordan*, 25 Kan. App. 2d 788, 972 P.2d 787 (1988). In *Brady*, the plaintiff sought a temporary injunction to require the defendants to remove a barrier from a road the plaintiff had been using for several years. The road at issue was on the defendants' property and was not a dedicated public road. The district court initially granted the temporary injunction as requested. The court waived the bond requirement for the plaintiff, and the plaintiff filed no bond before the temporary injunction was issued. The matter came on for trial on the question of a permanent injunction but, at this point, a new trial judge had been assigned to the case. After hearing the evidence, the trial court dissolved the temporary injunction, denied a permanent injunction, and awarded the defendants nominal damages and substantial attorney fees. In support of its decision, the district court stated:

> "'Whereas, the temporary injunction statute prior to 1988 had made the procurement of a surety bond a condition precedent to an effective temporary injunction, the statute, in its current state, makes the procurement of a surety bond merely a procedural tool for use by the trial judge. The substantive right to recover damages and attorney fees has always been a part of the statute, and, probably, within the inherent equitable powers of the Court. The current statute simply makes it optional as to whether or not the trial judge wants to secure the payment of the same with a surety bond.'" 25 Kan. App. 2d at 795-96.

The plaintiff in *Brady* appealed and, like the State does in this case, argued on appeal that K.S.A. 60-905(b) only allows the award of damages and attorney fees where a bond is ordered to secure the potential damage and attorney fees. A panel of our court reviewed the history of K.S.A. 60-905(b) and found:

> "To adopt Brady's interpretation would impose nonsensical results. For instance, under [Brady's] argument[,] . . . if the bond was waived or if the State was asking for an injunction, the party enjoined would never have an opportunity to collect damages or attorney fees. We conclude that is not what the 1988 amendment was designed for. That amendment changes only that the 'undertaking of a surety' is not always required, not that

damages and attorney fees may not be recovered when the undertaking of a surety is not possible or is waived." 25 Kan. App. 2d at 796.

The State argues the holding in *Brady* is distinguishable based on the facts; specifically, the district court used its discretion under K.S.A. 60-905(b) to waive the bond requirement for the plaintiff in *Brady* but in this case the district court was statutorily required to waive the bond requirement because the plaintiff was the State. We find this distinction makes no difference to the issue before the court. The question as presented by the State is whether damages and fees incurred as the result of a wrongful temporary injunction order are recoverable under K.S.A. 60-905(b) in the absence of an injunction bond. The language used by the Legislature in the statute does not reflect an intention to deny an injured party recovery for a wrongful injunction in the event an injunction bond was not posted. If that had been its intent, the Legislature presumably would have said so in the statute. In fact, it appears the Legislature amended the statute to conform to its primary purpose, "which contemplates that when a party obtains the extraordinary remedy of a temporary injunction and thereby temporarily deprives another of a right, the party should be responsible for any damages that arise if the restraint is wrongful." *Idbeis*, 285 Kan. at 499. If anything, the Legislature may have amended the statute to exempt the State from the injunction bond requirement because the State always has sufficient resources to pay any expenses and attorney fees caused by wrongful temporary injunctions. And by providing the district court with discretion to determine whether to waive the bond requirement, the Legislature allows the court to review the sufficiency of a private party's resources on a case-by-case basis.

The plain language of K.S.A. 60-905(b) does not predicate the recovery of damages on the posting of a bond; accordingly, the State's argument on this issue fails.

13

3. *Reasonableness of attorney fees awarded*

Because we have found that neither sovereign immunity nor the injunction-bond rule prohibits the district court from awarding Defendants attorney fees under K.S.A. 60-905(b), we now must determine whether the district court's award was reasonable. "In cases where a district court has authority to award attorney fees, that decision is reviewed for abuse of discretion. A party challenging such an award must show that no reasonable person would agree with the district court's decision or that the decision was not supported by substantial competent evidence. [Citation omitted.]" *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 572, 215 P.3d 561 (2009). Defendants argue that the State has failed to make such a showing.

An award of attorney fees pursuant to K.S.A. 60-905(b) is "limited to those actually and proximately resulting from the effect of the temporary injunction itself, as opposed to litigation expenses independent of the temporary injunction." *Idbeis*, 285 Kan. at 494. The party making the claim for attorney fees must show that the expenses were reasonable and necessary to obtain the dissolution of the temporary injunction. See *Miner v. Kirksey*, 113 Kan. 715, Syl. ¶ 2, 216 P. 284 (1923).

To evaluate the reasonableness of a party's claim for attorney fees, a district court "should consider the eight factors set forth in KRPC [Kansas Rule of Professional Conduct] 1.5(a)." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). Those factors are:

"(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3)    the fee customarily charged in the locality for similar legal services;

"(4)    the amount involved and the results obtained;

14

"(5)     the time limitations imposed by the client or by the circumstances;

"(6)     the nature and length of the professional relationship with the client;

"(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8)     whether the fee is fixed or contingent." KRPC 1.5(a) (2019 Kan. S. Ct. R. 300).

The district court is considered an expert on the issue of attorney fees and therefore may apply its own knowledge and professional experience in determining the value of services rendered. And while an appellate court is also considered an expert on the issue of attorney fees, it will not substitute its judgment for that of the district court on the amount of the fee unless in the interest of justice the appellate court disagrees with the district court. *Link, Inc. v. City of Hays*, 268 Kan. 372, 383, 997 P.2d 697 (2000).

In this case the district court awarded Defendants $152,585 in attorney fees, $137,937.50 of which went to the Hendricks & Lewis, PLLC law firm and $14,647.50 of which went to the Cornwell & Vokins law firm. The district court based that award on a careful review of Defendants' attorney billing logs and the KRPC 1.5(a) factors. Specifically, the district court found that (1) the case was novel and difficult and therefore required significant time and skill to perform the necessary services appropriately; (2) the work in this case precluded the attorneys involved from working on other cases due to the time sensitivity of the action; (3) the hourly rates charged by both firms were within the range of those customarily charged for similar services in Topeka, Kansas; (4) the work required to obtain the result was exceptional particularly in light of the constitutional issues involved; (5) Hendricks & Lewis had a prior relationship with one of the defendants and because it was an out-of-state firm, it was necessary to involve Cornwell & Vokins as local counsel; (6) all of the attorneys involved in the case were highly qualified and experienced; and (7) the fees assessed were based on hourly rates that were reasonable given the nature and uniqueness of the case. Based on a review of the record, we conclude that the district court's findings are supported by substantial

competent evidence and that a reasonable person would agree with its award of attorney fees totaling $152,585.

Despite this, the State argues that the district court abused its discretion in a number of different ways. First, the State argues that the district court's award of attorney fees violates *Idbeis* "by awarding attorneys' fees Defendants would have incurred even if the temporary injunction had been denied." See 285 Kan. at 499 ("[U]nder K.S.A. 60-905[b], a party injured by a temporary injunction is entitled to only those attorney fees and expenses it would not have incurred but for the temporary injunction and cannot recover for fees that would have been incurred in the litigation even if the temporary injunction had not issued."). Specifically, the State points to $12,269 worth of time entries that it claims should have been excluded under *Idbeis*. Its argument is undercut, however, by the fact that the district court already reduced its award of attorney fees to exclude those that it did not find to be related to either the State's request for injunctive relief or Defendants' motion to vacate it. Again, the district court is considered an expert on the issue of attorney fees and we will not invalidate its judgment unless doing so is necessary in the interest of justice. See *Link*, 268 Kan. at 383. In this case, the interest of justice does not require us to invalidate the district court's judgment. For that reason, we find the State's argument that the district court's award violated *Idbeis* to be unpersuasive.

Second, the State argues that the district court abused its discretion by making an award of attorney fees that was based on excessive hourly rates. In particular, the State points to the hourly rates charged by Hendricks & Lewis and claims that (1) those hourly rates were higher than the prevailing hourly rates for Topeka and northeast Kansas and (2) Defendants provided no basis for the district court to conclude that the higher rates were reasonable. Despite the State's claims to the contrary, Defendants did provide a basis for charging the higher rates; namely, the significant amount of experience and strong national reputation of Hendricks & Lewis as well as the inherent difficulties of being an out-of-state firm that was forced to represent its long-time client and litigate a

16

case in Kansas. Indeed, the district court specifically pointed to those justifications when finding that the hourly rates were reasonable. And again, the district court is considered an expert on the issue of attorney fees. In the absence of a showing that we must do so in the interest of justice, we will not substitute our judgment for that of the district court. See *Link*, 268 Kan. at 383.

Finally, the State argues that the district court abused its discretion by making an award of attorney fees that was based on improper billing procedures. Specifically, the State complains that Defendants' attorneys overstaffed and overbilled the case from the outset. As a result, the State argues it was unreasonable and an abuse of discretion for the district court to make an award of attorney fees based on a request that was "chock full" of improper entries. Again, however, the State's argument is undercut by the fact that the district court carefully reviewed the billing records and excised those entries that it deemed to be improper. It is not our place to supplant that decision unless justice so requires. See *Link*, 268 Kan. at 383. And when viewed in context, none of the entries that the State complains about require reversal. For the reasons stated above, we find the district court did not abuse its discretion in the amount of attorney fees it awarded Defendants under K.S.A. 60-905(b).

4. *Appellate fees and costs*

After oral argument, Defendants filed a motion requesting attorney fees and other expenses incurred in this appeal. Defendants rely on K.S.A. 60-905(b) as legal authority to support their request for fees and costs on appeal.

An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees. Supreme Court Rule 7.07(b)(1) (2019 Kan. S. Ct. R. 50). Interestingly, whether the district court had authority to award fees was the issue in two of the three claims presented by the State on appeal.

17

As set forth in detail above, we already have determined that the district court had authority to award fees under K.S.A. 60-905(b); accordingly, we also have that authority. See Supreme Court Rule 7.07(b)(1). Because Defendants' appellate attorney fees were occasioned entirely by the State's decision to appeal the district court's decision regarding its authority to award fees, we find an award of appellate attorney fees is justified. We now must decide whether the attorney fees and costs requested are reasonable.

As required, counsel for Defendants have provided this court with an itemized listing of the fees and expenses they request. The list indicates the person performing the work, the time involved, an hourly rate, and a brief description of the task. As also required, Defendants have provided this court with an analysis of the eight criteria set forth in KRPC Rule 1.5(a) to support their claim that the requested fee is reasonable and, therefore, ethically proper.

We have reviewed the itemized listing of fees and expenses and have grouped them into the following categories:

**FEES**

| | |
|---|---|
| Research and draft appellate brief | $ 84,557.50 |
| Prepare for and attend oral argument | $ 7,120.00 |
| Travel to and from Topeka for oral argument | $ 5,837.50 |
| Research and draft motion for appellate fees | $ 1,795.00 |
| Miscellaneous motions and tasks | $ 695.00 |
| TOTAL FEES | $ 100,005.00 |

**EXPENSES**

| | | |
|---|---|---|
| Mileage to and from Topeka | $ | 162.52 |
| Filing Fee – Motion for Pro Hac Vice | $ | 101.50 |
| TOTAL EXPENSES | $ | 264.02 |

**TOTAL FEES AND EXPENSES**           **$ 100,269.02**

Although the total sum of the itemized list of fees and expenses is $100,269.02, Defendants are not requesting this total sum. In their motion, Defendants state that "Mr. [Yale] Lewis has reduced his fee request by 50-percent, is not seeking reimbursement for airfare between Seattle, Washington and Kansas City, nor is he seeking reimbursement for hotel accommodations in Lawrence, Kansas."

The affidavit submitted by Mr. Lewis reflects that he spent 186.6 hours conducting research, drafting the appellate brief, travel, and presenting oral argument. However, when added together, the hours listed on the affidavit actually total 174.8. Mr. Lewis charged $475 per hour for his services, which is a total of $88,030 in fees. Based on Mr. Lewis' unilateral offer to reduce his fee by half, his modified request is $41,515.

The affidavit submitted by Tai Vokins reflects that he, Krystal Vokins, and various paralegals spent 83.5 hours conducting research, drafting the appellate brief, travel, presenting oral argument, drafting motions, and completing other related tasks. Tai Vokins charged $250 per hour, Krystal Vokins charged $200 per hour, and the paralegals charged $75 per hour, which is a total of $16,975 in fees. Mr. Vokins also requests $264.02 in expenses for mileage and for the pro hac vice fee. All told then, Defendants are requesting $58,490 in appellate fees and $264.02 for appellate expenses, for a grand total of $58,754.02.

19

The State vigorously opposes Defendants' motion for appellate fees and costs, arguing that the statute does not provide for such fees and even if it did, the appellate fees requested are not reasonable. We already have held that the statute provides for such fees so we turn to the State's second issue, the reasonableness of the amount requested. As set forth above, a court should consider the eight factors set forth in KRPC 1.5(a) in evaluating the reasonableness of an award of attorney fees.

We begin our analysis with the decision by Mr. Lewis to request only one-half the amount of hours he claims he spent researching and drafting the appellate brief in this matter. Although he cut his hours in half, the itemized billing records he submitted to the court in support of his request for fees reflect the time he spent *before* he reduced the amount of fees he requested. By doing so, Mr. Lewis effectively has made it impossible for this court to evaluate the reasonableness of the time reflected in the billing statement he submitted to the court. For example, the court may reduce the reasonable hours awarded if the number of compensable hours claimed by counsel includes hours that were unnecessary, irrelevant, and duplicative. We find the premodified billing statement presented by Mr. Lewis reflects many duplicative entries and perhaps excessive time billed. And again, Mr. Lewis has failed to provide a modified billing statement reflecting the reduced amount of hours he now requests for fees. The modified billing statement is necessary for us to properly evaluate the reasonableness of the modified fee requested. The modified billing statement would have had to include a description of the work he performed and the time involved *for the fee requested*, as opposed to hours he worked for which he is not requesting an award of fees.

With regard to the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, we find the issue presented on appeal to be novel and fairly difficult. Significantly, however, the issue presented on appeal was the exact same issue presented to the district court. In fact, the parties submitted to the district court approximately 257 pages in pleadings, arguing

20

their respective positions on the issue. In addition, the court held a hearing on the issue as reflected by the record in 26 pages of transcript.

In addition to the attorney fee issue being heavily litigated below, we note the district court filed a well-reasoned and thorough memorandum decision and order on the attorney fee issue, which addressed each of the arguments made by the parties in their briefs on appeal.

Based on the eight factors set forth in KRPC 1.5(a), we find the $58,490 in attorney fees requested for work on this appeal to be excessive. In support of our finding, we note the issue in this appeal already had been extensively litigated through written motions and oral argument at the district court level. We also note the lack of sufficient information to evaluate the reasonableness of Mr. Lewis' reduced fee request. In addition, we find the fees requested for time spent to travel to oral argument is excessive. Finally, we find unreasonable the fees request for time spent to prepare the three motions for an extension of time to file Defendants' appellate brief. In the absence of evidence to the contrary, such motions are for the convenience of counsel and their schedule. Because some of the entries in the affidavit submitted by Mr. Vokins include time spent on motions for extension of time as well as an additional task, we have calculated the total of those entries and credited half that amount to time spent on motions for extension of time and the other half to time spent on other tasks. For all of these reasons, we award to Defendants the sum of $15,450 in appellate attorney fees and the sum of $264.02 in expenses associated with this appeal. The award totals $15,714.02.

The decision of the district court awarding fees to Defendants is affirmed in its entirety, and Defendants' motion for appellate attorney fees and expenses is granted in part and denied in part.

21